Sanders *v.* The State.

---

No. 10,447.

## SANDERS *v.* THE STATE.

CRIMINAL LAW.—*Right of Defendant to Plead.*—One charged with a crime has a right to plead, free from restraint and fear of violence.

SAME.—*Remedy where Right to Plead is Denied.*—Where the accused is forced, through fear of mob violence, to enter a plea of guilty, he has a right to relief from the judgment entered on such plea.

SAME.—*Procedure.—Statutory Remedies.*—Where the statute prescribes a remedy, it must be pursued, and resort can not be had in such a case to the common-law procedure.

SAME.—*Procedure in Cases where Plea is Extorted by Violence.*—The statute does not make provision for cases where the plea is forced from an accused through fear, and resort may be had to the common-law procedure.

SAME.—*Pardon.*—The fact that the power to pardon is lodged in the Governor does not deprive the courts of power to grant relief in a proper case.

SAME.—*Effect of Pardon.*—A pardon is the exercise of executive clemency, and, as an accused is entitled to an impartial trial, that right can not be denied him on the ground that the Governor may pardon in cases where he is satisfied that there is an unjust conviction.

SAME.—*Common-Law Rules.*—The rules of common law not inconsistent with our Constitution or statutes, and not opposed to our system of government, may be resorted to when necessary to vindicate a clear right.

SAME.—*Courts.--Inherent Powers.*—Courts possess inherent powers independent of legislative enactment, and among them is the power to prevent a judgment obtained by duress from being enforced against an accused person.

SAME.—*Writ Coram Nobis.*—The right to maintain a proceeding in the nature of a writ *coram nobis* has not been abrogated by our statute.

Sanders v. The State.

SAME.— *When Writ Coram Nobis Proper.*—A writ *coram nobis* will lie when it is necessary for the accused to bring some new fact before the court which can not be presented in any of the methods provided by statute, but it will not lie in cases covered by statutory provisions.

SAME.—*Duress.—Plea Extorted by.—Judgment.*—A plea of guilty, forced from an accused by a well-grounded fear of mob violence, will not sustain a judgment of conviction when properly attacked.

SAME.—*Setting aside Sentence.*—A sentence pronounced on a plea of guilty,. forced from an accused by a well-grounded apprehension of mob violence, may be set aside in a proceeding in the nature of a writ *coram nobis*.

SAME.—*Jeopardy.*—An accused is not in jeopardy where the only plea filed by him is one of guilty, and filed because of a well-grounded fear of mob violence.

SAME.— *When Jeopardy Attaches.*—An accused is not in jeopardy until the case is ripe for trial and the trial is actually entered upon, and jeopardy does not attach in cases where the only plea is one forced from the defendant by fear.

SAME.—*Necessity.—Acts Excused by.*--A defendant who enters a plea of guilty upon a necessity produced by well-grounded fear and imminent danger of mob violence, may avoid the plea by a proceeding in the nature of a writ *coram nobis*.

PRACTICE.— *Writ Coram Nobis.*—An issue of fact may be formed upon a petition for a writ *coram nobis*, and when so formed may be tried as other issues of fact are tried.

SAME.—*Facts Admitted.*—Where no issue is made, and the facts are conceded, it is the duty of the court to apply the law to the facts.

From the Clay Circuit Court.

*N. G. Buff, J. T. Pierce* and *D. T. Morgan,* for appellant.

*F. T. Hord,* Attorney General, *C. E. Matson,* Prosecuting Attorney, *W. W. Carter, G. A. Knight, C. H. Knight* and *W. W. Thornton,* for the State.

ELLIOTT, J.—This is an extraordinary case. The facts proved, the procedure adopted and the relief sought are strange and unusual.

The facts stated and proved are these : In April, 1878, Josephine Sanders, the wife of the appellant, was slain by a pistol shot; at the time she was in a room alone with her husband, and he did not and could not give any account of her death·; he was then, and had been for many years, addicted to the use of alcoholic liquor and opium to such an extent

that he had probably become insane; he was arrested shortly after the death of his wife; his case came on for trial; his counsel and many witnesses of unquestioned veracity testify that at the time of his trial he was insane; the homicide had aroused an intense feeling in the vicinity of the county-seat, where the killing was done, and the case put to trial; threats were made of lynching by a mob; counsel prepared an affidavit for delay, but feared to present it lest the mob should seize and hang the accused; the sheriff of the adjoining county came to the county-seat of Clay county and warned the sheriff of that county of imminent danger from an armed mob; a jury had been empanelled and a plea of not guilty entered, but so great was the threatened danger that counsel, to save, as they believed, their client's life, withdrew the plea of not guilty, entered a plea of guilty, on which, without evidence, the jury returned a verdict of guilty, and a life sentence was immediately pronounced upon the verdict by the court; the accused was at once hurried to the train and conveyed to the State's prison. For the purpose of clearly exhibiting the situation at the time the plea of guilty was entered, we quote from the testimony of the gentlemen who were then appellant's counsel, and who are men of high character and undoubted integrity. One of them says: "As one of his counsel I urged and demanded of him a plea of guilty, with which I pledged myself to save his life; his counsel all concurred; Sanders always denying any knowledge of the homicide; his counsel were responsible for the act of pleading guilty, believing at the time that it was the only course by which his life might be saved." Another one of the counsel says that "the accused was bewildered and refused, but finally seemed to consent, and at last appeared to acquiesce in letting counsel take their own course; that the court was agitated and alarmed, and recommended and advised the plea of guilty." The turnkey of the jail, the sheriff of Clay and the sheriff of the adjoining county concur in stating that there was great and imminent danger of mob violence; one of the jurors says that there was

intense excitement among the large crowd of people present at the trial; that he was himself stationed at the door of the court-house to signal to the jail any movement of the mob; that the judge was greatly excited and said in the evening, that he "had not drawn an easy breath until he had seen the train in motion with Sanders aboard." There is much other evidence as to the presence of a large number of angry and excited men, and it is also shown that they uttered threats of violence and appeared determined to seize and hang the appellant unless punishment was at once imposed upon him.

The relief prayed is that the judgment entered upon the plea of guilty may be vacated and the appellant put upon his trial in due form of law.

There are strong reasons in support of the appellant's prayer. All men are by our laws entitled to a fair trial, in absolute freedom from restraint and entire liberty from fear of threats and violence. It is almost a mockery to call that a trial, or a judicial hearing, which condemns an accused upon a plea of guilty forced from his reluctant counsel by threats of an angry and excited mob, and interposed because they believed that to proceed with a trial upon a plea of not guilty would result in the hanging of their client by lawless men. A man who makes a promissory note because of fear is entitled to relief. A man who executes a deed under duress is entitled to judicial assistance. A will executed under the influence of fear falls before the law. These are small things when compared with life and liberty, and yet in the eyes of the law they are null. If such things are null when procured by fear, or extorted by violence, should not a plea be so, when to have refused it would have been to put in jeopardy the life of the man arraigned upon a charge of felony? In many respects the facts of this case go far beyond that of ordinary cases of duress, for here the officers of the law, judge, sheriffs and jailers were inspired with fear of violence; counsel of age and experience, influenced by the

Sanders v. The State.

appearances of danger which surrounded their client, secured from him a reluctant acquiescence to the plea of guilty. More than this, the accused, if not at the time absolutely insane and incapable of understanding what he did, was weak and enfeebled in mind, and, as his counsel express it, "lost and bewildered."

That the case made is one entitling the appellant to some relief is clear, but whether the law vests the courts with power to grant it is by no means so clear. Unless the law, as it exists, confers this authority, then the courts do not possess it. Hard as the case may be and grievous as may be the suitor's situation, they can make no new law to fit his case. If a new law is needed it must come from the law-making power.

The right to pardon is vested in the chief executive of the State, and this, it is suggested, is the source from which relief must be obtained in such cases as this. But if the courts have power to grant relief, the fact that the Governor may pardon does not abridge a party's right to appeal to the courts for assistance. The power to pardon does not exclude the right to hear and determine; both powers may concurrently exist. Nor is a pardon always adequate relief. An innocent man suffering from an illegal sentence, procured by fraud or extorted by violence, may desire a trial and an acquittal which shall remove from his character the stain of guilt, and this the exercise of the pardoning power can not do. To pardon is to exercise executive clemency; it is an act of mercy. An acquittal is the vindication of a right, the award of justice. Again, the executive may not feel warranted in turning a condemned criminal loose, and, as he can grant no new trial, this he must do or deny a pardon. The court need not discharge, but may put the accused again to trial. We can not believe that the power to pardon was meant to cover every case of an unjust conviction, where the accused had, without fault on his part, not availed himself of the right of appeal. If our statute provides exclusive remedies for the relief

of an accused, then, of course, those remedies must be pursued, and our next enquiry naturally is, are such remedies provided?

There is the remedy by appeal; but this can not reach such a case as the one in hand. An appeal would have been unavailing.

The record showed a confession; for, on the face of the record, such the plea appeared to be, and there were no objections or exceptions. It is evident that the statutory provisions concerning appeals in criminal cases can have no application to a case like this. Here there were no errors committed in ruling on pleadings or in conducting a trial. In truth, there was no trial, and in law no confession; for a confession, like any other act, extorted by violence or procured through fear, is without effect. If, then, there was in fact no trial, and in law no plea of confession, there was a condemnation without either a trial or a confession by plea. If it be correct to affirm that the plea procured by fear is of no effect, it inevitably follows that the sentence was pronounced where no hearing was had and no guilt acknowledged. It seems clear, therefore, that the statute concerning appeals is not applicable, and, if not applicable, then it can in no sense be exclusive of other remedies, if any such there are.

There is the remedy by a new trial. That can have no application to a case where there was no trial. Again, it can not apply, because as the statute stood at the time of the appellant's sentence, the motion must have been made before judgment, and that, the record shows, would have been impossible in this case. No time intervened between the sentence and its execution. Once more, this remedy can not be meant for such a case as this, because the grounds for a new trial prescribed by the statute would not cover the wrong here committed, nor could it bring relief.

It is obvious that a motion in arrest of judgment can not be appropriate, for the face of the record is fair, and in appearance all the proceedings are regular. A motion for a

*venire de novo* is not a statutory remedy, but is a recognized one borrowed from the common law, and it, as is sufficiently obvious, can have no application.

We find, then, no statute applicable, and consequently none excluding other known and recognized remedies, if any such there are, not inconsistent with our constitution and laws.

May we look to the common law? Our statute provides that, among other laws, " The common law of England, and the statutes of the British Parliament made in aid thereof prior to the fourth year of the reign of James the First (except the second section of the sixth chapter of forty-third Elizabeth, the eighth chapter of thirteenth Elizabeth, and the ninth chapter of thirty-seventh Henry the Eighth), and which are of a general nature, not local to that kingdom," and not inconsistent with the Constitution of the United States or of the State of Indiana, and not inconsistent with the National and State statutes, shall be the law of the State. It is plain that no provision of the common law which prescribes a remedy for relieving an accused, who has been forced to plead in confession by lawless violence, can be deemed in conflict with the Constitution of the State or Nation; for both these instruments are explicit in their commands that all accused persons shall have a public and impartial trial, and shall only be condemned by due process of law. Nor is there any statute, as we have seen, which can be deemed inconsistent with a common-law remedy which will reach a case like this.

The common law did not authorize the granting of a new trial in cases of felony. *Rex* v. *Bertrand,* 10 Cox C. C. 618; Harris Crim. Law, 406. The remedy of an accused in cases where the court erred as to a matter of law was a recommendation to pardon, signed by the judges, and this was granted as a matter of course. *Reg.* v. *Murphy,* Law R. 2 P. C. 535. The remedy, where there was an error of fact, was by a proceeding called a writ *coram nobis.* This was a very common remedy in civil actions, but was seldom resorted to in criminal cases. Although rarely used in criminal cases, we find

it conceded by courts and writers to be an appropriate remedy in criminal prosecutions as well as in civil actions. Judge Cooley, in a note to Blackstone's Commentaries, says: "In this chapter Sir W. Blackstone has considered only the modes by which a judgment may be reversed by writ of error brought in a court of appeal, and has stated that this can only be done for error in law. There is, however, a proceeding to reverse a judgment by writ of error in the same court, where the error complained of is *in fact* and not in law, and where of course no fault is imputed to the court in pronouncing its judgment. This writ is called the writ *coram nobis*, or *coram vobis*, according as the proceedings are in the king's bench or common pleas, because the record is stated to *remain* before us (the king), if in the former, and before you (the judges), if in the latter, and is not removed to another court. In this proceeding it is of course necessary to suggest a new fact upon the record from which the error in the first judgment will appear; thus, supposing the defendant, being an infant, has appeared by attorney instead of guardian, it will be necessary to suggest the fact of his infancy, of which the court was not before informed." In the note to *Jaques* v. *Cesar*, 2 Saunders, 100, the early English cases are cited, showing the scope, character and effect of the writ. The common-law doctrine is also discussed in Bacon Abridg., title Error; Comyns' Digest, title Proceeding in Error; 2 Tidd's Practice, 1136; 7 Robinson Pr. 149; Stephen Pl. 118. It is recognized in many of the States as forming a part of the law; it is so held in Alabama, *Holford* v. *Alexander*, 12 Ala. 280; in Arkansas, *Adler* v. *State*, 35 Ark. 517; S. C., 37 Am. R. 48; in Iowa, *McKinney* v. *Western, etc., Co.*, 4 Iowa, 420; in Kentucky, *Meredith* v. *Sanders*, 2 Bibb, 101; *Duff* v. *Combs*, 8 B. Mon. 386; *Combs* v. *Carter*, 1 Dana, 178; in Maryland, *Hawkins* v. *Bowie*, 9 Gill & J. 428; *Kemp* v. *Cook*, 18 Md. 130; in Michigan, *Teller* v. *Wetherell*, 6 Mich. 46; in Mississippi, *Fellows* v. *Griffin*, 9 Sm. & M. 362; *Keller* v. *Scott*, 2 Sm. & M. 82; *Land* v. *Williams*, 12 Sm. & M. 362; in Missouri, *Calloway* v. *Nifong*, 1 Mo.

223; *Ex parte Toney*, 11 Mo. 661; *Powell* v. *Gott*, 13 Mo. 458; in New York, *Higbie* v. *Comstock*, 1 Denio, 352; *Maher* v. *Comstock*, 1 How. Pr. 175; *Smith* v. *Kingsley*, 19 Wend. 620; in North Carolina, *Roughton* v. *Brown*, 8 Jones, 393; in Ohio, *Dows* v. *Harper*, 6 Ohio, 518 (27 Am. Dec. 270); in Pennsylvania, *Wood's Ex'rs* v. *Colwell*, 34 Pa. St. 92; in Tennessee, *Hillman* v. *Chester*, 12 Heiskell, 34; *Patterson* v. *Arnold*, 4 Cold. 364; *Wynne* v. *Governor*, 1 Yerger, 169 (24 Am. Dec. 448); *Crawford* v. *Williams*, 1 Swan, 341; in Texas, *Mills* v. *Alexander*, 21 Texas, 154; *Moke* v. *Brackett*, 28 Texas, 443; *Giddings* v. *Steele*, 28 Texas, 732; and in Virginia, *Reid's Adm'r* v. *Strider's Adm'r*, 7 Grat. 76.

It is declared to be a part of the judicial procedure of the United States. *Pickett* v. *Legerwood*, 7 Pet. 144; *Strode* v. *Stafford*, 1 Brock. (U. S. C.) 162; *United States* v. *Plumer*, 3 Clifford (U. S. C.) 1. In *Pickett* v. *Legerwood*, *supra*, it was said: " The cases for error *coram vobis*, are enumerated without any material variation in all the books of practice, and rest on the authority of the sages and fathers of the law." Our text-writers agree in holding that the remedy exists, unless superseded or abolished by statute. Powell Appellate Proceedings, 107; Curtis Com., sec. 178; Freeman Judg., sec. 94. The author last named says: " The writ of error *coram nobis* is not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication, made while some fact existed which, if before the court, would have prevented the rendition of the judgment, and which, without any fault or negligence of the party, was not presented to the court."

It is suggested in the argument of the counsel for the State that even at common law the writ *coram nobis* had fallen into disuse in criminal cases, and should not be regarded as part of the common-law procedure. All of the cases which discuss the question treat the rule as correctly laid down in the books of practice, and they all agree in declaring it applicable to criminal as well as civil cases. In the celebrated and bitterly

Sanders *v.* The State.

contested case of *Regina* v. *O'Connell*, 7 Irish Law, 261, note 357, the writ was allowed, and no question made as to the right of the accused to demand it. The case was carried by appeal to the House of Lords, where, after a stubborn fight, the judgment of the Irish court was reversed; but no doubt was intimated as to the right of Daniel O'Connell and his asso-ciates to sue out the writ. *O'Connell* v. *Regina*, 11 Clark & F. 155, opinion, p. 252. In *United States* v. *Plumer, supra*, Judge CLIFFORD examined the authorities with care, and held that the writ would lie in criminal as well as in civil cases (*vide* opinion, p. 59). It is true that the writ was denied in that case, not, however, because it was not a proper procedure in a court of competent jurisdiction, but because the court to which the application was made had no jurisdiction at all in crim-inal cases. In *Adler* v. *State, supra*, the writ was held to lie in a case in some of its features remarkably like the present. But we will not extend the discussion by commenting on the cases. A somewhat careful and full investigation has enabled us to find many cases affirming the right to the writ in both civil and criminal cases, where there is no statute abolishing or superseding it, but none denying that it exists at common law and in jurisdictions where there is no overruling statute.

It is held in well considered cases, that, although there is a statute regulating proceedings in criminal cases, the writ is not abolished unless the statute expressly or by implication abrogates it or supplants it by some other remedy. This is so held, with respect to writs *coram nobis*, by MARSHALL, C. J., in *Strode* v. *Stafford, supra*, and it is so held in *Cooke, Petitioner*, 15 Pick. 234. In speaking of the claim that the writ *coram nobis* can not exist under the statute, COWEN, J., said, in *Smith* v. *Kingsley*, 19 Wend. 620: "There is no statute ex-pressly and in terms repealing its power, nor any which does so by necessary implication. Mere silence or omission to regulate proceedings upon such a writ will not operate as a repeal. The power, therefore, remains as at common law, except as to the mere form *coram nobis resident*; because the

fiction of the record remaining before the King himself, is gone. We therefore have lost the name of the writ, but nothing more. *Camp* v. *Bennett*, 16 Wend. 48." This doctrine is in harmony with the well established principle that the statutory procedure blends with that of the common law. Mr. Bishop says: "The statute must be construed by the common law and in harmony with it, and by the common law must its defects be supplied." Statutory Crimes, section 366; Bishop Written Laws, section 142. This author also quotes with approval from our own case of *Walker* v. *State*, 23 Ind. 61, saying: "Again, where the common-law procedure has been to a greater or less extent superseded by statutes, 'the old rules are,' as observed in an Indiana case, 'continued in force, not inconsistent with the criminal code, and so far as they may operate in aid thereof.'" There are many instances in which our court has resorted to common-law methods of procedure where the statute is silent on the subject. *Marcus* v. *State*, 26 Ind. 101; *Bell* v. *State*, 42 Ind. 335; *Hardin* v. *State*, 22 Ind. 347; *State* v. *Berdetta*, 73 Ind. 185 (38 Am. R. 117); *Wall* v. *State*, 23 Ind. 150; *Burk* v. *State*, 27 Ind. 430. But it is useless to multiply citations; there are comparatively few criminal cases that do not contain some reference to common-law principles. What, for instance, would be our situation upon the question of self-defence, if we could not look beyond our statute to ascertain what it is, and what the procedure is in cases where it is an essential element? In civil proceedings the rule is firmly settled that there are cases where relief will be granted, although there is no specific remedy provided by statute. Bigelow Frauds, 170; 3 Whart. Crim. Law, 3222; Freeman Judg., section 99; *Dobson* v. *Pearce*, 12 N. Y. 156; *Molyneux* v. *Huey*, 81 N. C. 106; *Jarman* v. *Saunders*, 64 N. C. 367; *Huggins* v. *King*, 3 Barb. 616; *Stone* v. *Lewman*, 28 Ind. 97; *Johnson's Adm'rs* v. *Unversaw*, 30 Ind. 435; *Nealis* v. *Dicks*, 72 Ind. 374. That courts possess inherent powers not derived from any statute is undeniably true. Among these powers are the right to correct their records so as to make them speak the

truth, to pass upon the constitutionality of statutes, to prevent the abuse of their authority or process, and to enforce obedience to their mandates. If it were granted that courts possess only such rights and powers as are conferred by statute, they would be mere creatures of the Legislature, and not independent departments of the government. They are not mere creatures of the Legislature, but are co-ordinate branches of the government and in their sphere not subject to legislative control. *Deutschman* v. *Town of Charlestown*, 40 Ind. 449 ; Cooley Const. Lim. 114, 116 ; 2 Story Const. 377.

It is our opinion that the courts have the power to issue writs in the nature of the writ *coram nobis*, but that the writ can not be so comprehensive as at common law, for remedies are given by our statute which did not exist at common law —the motion for a new trial and the right of appeal—and these very materially abridge the office and functions of the old writ. These afford an accused ample opportunity to present for review questions of fact, arising upon or prior to the trial, as well as questions of law ; while at common law the writ of error allowed him to present to the appellate court only questions of law. Under our system all matters of fact reviewable by appeal, or upon motion, must be presented by motion for new trial, and can not be made the grounds of an application for the writ *coram nobis*. Within this rule must fall the defence of insanity as well as all other defences existing at the time of the commission of the crime. Within this rule, too, must fall all cases of accident and surprise, of verdicts against evidence, of newly discovered evidence, and all like matters.

Duress not only avoids all acts, but it also relieves from responsibility for crime. 1 Archbold Crim. Pr. 52 ; 1 Hale P. C. 56 ; 1 East P. C. 70. Necessity justifies many things as against an accused ; it justifies the discharge of a jury, although the trial has been duly entered on, because of the illness of a judge or juror ; it dispenses with essential averments in indictments. 1 Bishop Crim. Proced. 493 ; *Bescher* v. *State,*

32 Ind. 480; *Mixon* v. *State*, 28 Am. R. 695. In *Commonwealth* v. *Jailer, etc.*, 7 Watts, 366, a prisoner applied for a discharge under the provisions of a statute which entitled an accused to a trial or discharge at the second term of the court after his arrest. He had been afflicted with smallpox, and was recovering, but, as the report says, " his aspect was so loathsome as to spread a general panic." The application for a discharge was refused, the court saying: " There is no doubt that necessity, either moral or physical, may raise an invariable exception to the letter of the *habeas corpus* act. A court is not bound to peril life in an attempt to perform what was not intended to be required of it." If, as against an accused, the Government may invoke the doctrine of necessity and compulsion, may it not be invoked by him for the purpose of relieving himself from a plea wrung from him by fear of immediate and violent death? The assistance asked does not go to the extent of discharging without a trial, but the appeal is for relief from a plea of confession and for the award of an opportunity for trial. The application of the appellant brings to the knowledge of the court a fact which, if known, would have prevented a conviction; and all the cases agree that where a new fact is suggested which would have prevented judgment, the accused is entitled to the writ *coram nobis*. We can not conceive it possible—possible, we mean, in a legal sense, and under legal principles—that a court, with knowledge that a plea of guilty is forced from a prisoner by fear of death, would imprison him for life without a hearing or trial.

Duress is a species of fraud. Mr. Bishop says: " The common-law doctrine is familiar, that fraud vitiates every transaction into which it enters." 1 Bishop Crim. Law, 1008. It is a principle of wide application, that a judgment obtained by fraud may be annulled. The fraud, however, must be as to some act in securing jurisdiction, or as to something done concerning the trial or the judicial proceedings themselves; the rule has no application to cases of fraud in the transaction, or matters connected with it, out of which the legal con-

troversy arose. Bigelow thus states the rule: "The fraud referred to must consist either in facts relating to the manner of obtaining jurisdiction of the cause, to the mode of conducting the trial, or to the concoction of the judgment, or in facts not actually or necessarily in issue at the former trial." Bigelow Frauds, 170. "Fraud," said DeGrey, C. J., in *Rex* v. *Duchess of Kingston*, 20 How. St. Trials, 355, 544, "is an extrinsic, collateral act; which vitiates the most solemn proceedings of courts of justice. Lord Coke says, it avoids all judicial acts, ecclesiastical or temporal." There is, indeed, no diversity of opinion as to the effect of the fraud, for it is agreed on all sides, as stated by Mr. Freeman, in speaking of judgments, that "Upon proof of fraud or collusion in their procurement they may be vacated at any time." While there is entire harmony upon this point, there is some diversity of opinion as to whether a judgment can be collaterally impeached for fraud. Freeman Judg., sections 99, 132; *Wiley* v. *Pavey*, 61 Ind. 457. In his discussion of this subject Mr. Bishop says: "In criminal cases, there is no question, that, when fraud is practiced at the trial by the prosecutor, producing a conviction, a new trial will be granted on the prayer of the defendant." 1 Bishop Crim. Law, section 1009. As against the accused the rule goes much further, for it is held that if the judgment of acquittal is obtained through his fraud it is an absolute nullity. 1 Archbold Crim. Pr. 352, cases cited in *n*; 1 Whart. Crim. Law, section 546; 1 Bishop Crim. Law, section 1010; 3 Whart. Crim. Law, section 3222; *Commonwealth* v. *Dascom*, 111 Mass. 404; *Commonwealth* v. *Alderman*, 4 Mass. 477; *Halloran* v. *State*, 80 Ind. 586; *Watkins* v. *State*, 68 Ind. 427 (34 Am. R. 273). In the case under consideration the fraud, it is true, is not that of the prosecutor, but it is such a fraud as deprived the appellant of the constitutional right to a fair trial by an impartial jury, and surely this entitles him to some relief, and under the elementary maxim, that "there is no right without a remedy," there must be some power to grant relief, and some remedy by which it can be secured.

The practice in cases similar to this is unsettled (we have found no case exactly like it), and we think that the rule indicated by Mr. Bishop is the correct one. "When a proceeding," says this author, "is entirely fraudulent, having no sound part whatever, there is no collateral or direct effect to be given it; it is as though it had not been; only a party to the fraud is not permitted to rely on this imperfection. But practically most frauds relate only to some particular in the proceeding,—not vitiating, therefore, the whole." 1 Bishop Crim. Law, section 1011. The fraud in this case extends only to the plea and subsequent proceedings, and the appellant may, therefore, be rightfully put to trial upon the original indictment.

It is the general rule, that, in order to sustain a verdict in a criminal case, there must be a plea. In *Johnson* v. *People*, 22 Ill. 314, it is said: "But it is believed that the practice is uniform, both in England and this country, in requiring the formation of an issue to sustain a verdict. Without it there is nothing to be tried by the jury." *Yundt* v. *People*, 65 Ill. 372; *Hoskins* v. *People*, 25 Am. R. 433. This is the doctrine of our own cases. *Tindall* v. *State*, 71 Ind. 314; *Graeter* v. *State*, 54 Ind. 159; *Fletcher* v. *State*, 54 Ind. 462. The rule goes so far as to declare that an arraignment is essential, and that until there has been an arraignment, the case is not ripe for trial. *Fletcher* v. *State*, *supra; Weaver* v. *State*, 83 Ind. 289; *Regina* v. *Fox*, 10 Cox C. C. 502.

No jeopardy attaches until the case is ripe for trial and the trial actually entered upon; and here the case was not ripe for trial, because the plea extorted from the appellant was null, and he was, therefore, not in legal jeopardy. The proceeding adopted by the appellant is, in its general features, and in its consequences, closely analogous to a motion for a new trial, and as a defendant, who takes a new trial granted at his own request, can not claim that the finding set aside constitutes a prior jeopardy, he can not do so in a proceeding like this. *Veatch* v. *State*, 60 Ind. 291.

Sanders *v.* The State.

We do not deem it necessary to discuss the question of the appellant's insanity at the time the plea of guilty was entered. There are cases holding that such a cause will support a motion for a writ *coram nobis,* or some proceeding of like character. *Adler* v. *State, supra; State* v. *Patten,* 10 La. An. 299 ; 1 Whart. Crim. L. 52, note *r* ; 1 Bishop Crim. L., section 396, auth. n.; *McClain* v. *Davis,* 77 Ind. 419. All we deem it necessary to say upon this point is, that if the court below has determined this question before receiving the plea, an appellate court should be slow to interfere, if it, indeed, should interfere at all, and should only do so upon clear and convincing evidence. The question of the appellant's capacity is, however, a circumstance of importance to be taken into consideration, in connection with his conduct when a plea was entered, as this was, under circumstances threatening great and immediate peril. Ewell. Lead. Cas. 771.

The case comes to us upon uncontradicted evidence that the plea of guilty was not the voluntary act of the accused, but was induced by fear of violence. There is no necessity, therefore, for another trial upon this issue of fact. The fact of the existence of unlawful and violent compulsion, which deprived the appellant of freedom of will and liberty of action is settled, and settled without contrariety of evidence or conflict of testimony, and upon that issue nothing remains for trial. With the undisputed facts before us, the only course open to us is to pronounce judgment of law upon the facts thus established. If the State had made an issue of fact, or offered opposing evidence, then another trial would have been necessary. It is no doubt true that the State may make an issue of fact by controverting the allegations in the motion of the accused, or by offering opposing evidence, and in the event that an issue of fact is joined or presented it is to be tried as other issues of fact are tried. Where, however, as here, the State offers no evidence, and makes no denial, and the evidence of the accused is uncontroverted, there is no necessity for a trial. We have decided the case upon the motion and evidence ad-

duced in its support, and not upon the demurrer to the complaint.

Judgment reversed, with instructions to vacate the judgment upon the indictment against the appellant; to permit him to withdraw the plea of guilty, and plead to the indictment; to put him upon trial in due form of law upon the indictment preferred against him, and for further proceedings. in accordance with this opinion.

The clerk will issue the proper order for the return of the appellant.

Petition for a rehearing overruled.