## ADAMS SCHOOL TOWNSHIP v. IRWIN.

[No. 18,323. Filed March 10, 1898.]

JUDGMENT.—*Setting Aside for Fraud.*—*Presumption.*—In an action to set aside and vacate a judgment taken by default, it will be presumed in the absence of any showing to the contrary, that the plaintiff procuring such judgment commenced his action in the proper court, in the usual and ordinary way, by filing a complaint, and by serving the proper process on the proper party. *p. 16.*

SAME.—*Action by Township to Set Aside for Fraud.*—Where a judgment against a school township was taken by default, through the connivance of the trustee on whom process was properly served, such judgment will not be vacated at the instance of the township, where it is not shown that the plaintiff procuring the judgment was guilty of any fraud. *pp. 16-20.*

From the Henry Circuit Court. *Affirmed.*

*F. A. Walker* and *F. P. Foster*, for appellant.

*M. A. Chipman*, *S. M. Keltner* and *E. E. Hendee*, for appellee.

JORDAN, J.—Appellant, Adams school township, in Madison county, Indiana, began this action against the appellee in the Madison Circuit Court, on January 2, 1896. On motion, the cause was venued to the Henry Circuit Court, wherein a demurrer was sus-

tained to the complaint for insufficiency of facts, and appellee recovered judgment on demurrer.

' The object of the proceedings was to set aside and vacate a judgment rendered in favor of the appellee against the appellant, upon default, in the Madison Circuit Court, on May 4, 1892, upon the grounds of alleged fraud.   The prayer of the complaint is that all proceedings on the judgment be vacated, and the default of the plaintiff in the action in which the judgment was rendered be set aside, and that it be permitted to appear therein and defend.

The following are substantially the facts set out in the complaint:   Adam Forner was the duly elected and qualified trustee of Adams township, Madison county, Indiana, and acted as such, from the year 1890 to August 8, 1895 and, *ex officio*, was the trustee of Adams school township during all of said period. That during the time he was acting as trustee, he executed and delivered, as such official, to one George W. Ray, a warrant on Adams school township for $650.00, purporting upon its face to have been executed for certain apparatus and school supplies to be used in the public schools of that township.   Subsequently Ray transferred the warrant to the defendant Irwin, who, as the holder thereof, on the 19th day of April, 1892, instituted an action in the Madison Circuit Court against said school township, and recovered a judgment therein against it, on default, for $516.36.   It is further averred that this judgment remains unappealed from and unpaid, and that the apparatus and supplies for which the warrant purported to have been executed, were not purchased by the trustee from Ray, and were not received by the township, nor used in the schools thereof, and that the warrant was executed and delivered by trustee Forney to Ray, pursuant to a corrupt and fraudulent bar-

gain and conspiracy by and between said Ray and Forney, whereby it was the purpose of said parties to defraud the township out of the amount of money mentioned in the warrant, and that Ray accepted the warrant and transferred it to the defendant Irwin without having sold or delivered any of the articles mentioned in said warrant to the school township. It is further alleged that the judgment was obtained upon the default of appellant to appear to said action. That Forney, who was the trustee at the time the action was instituted and when the judgment was rendered, had knowledge of all of the aforesaid facts, but that none of said facts were brought in any way to the attention of the court. That Forney concealed the same from the court, and permitted a judgment to be taken against the township by default, for the purpose, on his part, of practicing a fraud on the court, and that thereby a fraud was practiced on the court, and a judgment recovered by the defendant Irwin on the warrant, which, in his hands, was tainted with the fraud. There are facts averred tending to show that one Titus, who became the successor to Forney, in August, 1895, exercised diligence in instituting this action, after he became fully aware of the fact that the school supplies said to have been the consideration of the warrant in question had not been received or used by the township. There are no facts whatever tending to impute any fraud or misconduct to the appellee herein in obtaining the judgment against appellant—in fact, nothing of the kind is claimed by counsel for the appellant.

The attack made by the complaint on the judgment, seems to be upon the theory that the warrant, in the hands of the appellee, when he instituted his action therein, was tainted with the fraud of Ray and Forney, which led up to its execution, and of which it

was the offspring, and that the latter practiced a fraud on the court by his failure to appear to the action as the representative of the township and inform the court of the fraud which he and his co-conspirator Ray had perpetrated on the township, and thereby defeat the appellee in his suit; and that his failure or neglect so to do resulted as a fraud upon the court, for the reason that by it not being apprised of the facts, which would have defeated a recovery on the fraudulent warrant, rendered the judgment thereon. Or, in other words, the essence or gist of the complaint seems to be that appellant was prevented from setting up the fraud or collusion between Ray and its trustee as a defense to the action, by reason of the latter's negligence or wilful failure to respond to the summons of the court, and appear in the name and on behalf of appellant, and inform the court of the facts in the case, and cause them to be interposed as a defense. It is not even shown that the appellee had any knowledge before, or when he commenced his action upon the warrant, or when the judgment was rendered, that it was impressed with fraud, or that any defense existed which would bar recovery thereon, or that he did anything which prevented appellant from availing itself of the defense in question, or in any manner imposed any fraud on it or the court, in obtaining his judgment.

The facts set up in the complaint fall short of showing in any manner that the appellee was guilty of any fraud or wrong, either in receiving the warrant from Ray, or in the proceeding wherein he recovered his judgment. Appellant seeks, on the ground of fraud, to invoke the equity powers of the court, in awarding the relief which it demands. As we have stated, there is an entire absence, under the facts, of any showing on the part of appellant, that the appel-

lee, as prevailing party in the suit wherein the judgment was obtained, was guilty of any fraud or conduct whereby the complaining party herein or the court rendering the judgment was imposed upon or misled. The complaint charges no collusion between the latter and appellant's trustee. It would seem that appellee commenced his action in the proper court, in the usual and ordinary way, by filing a complaint and procuring appellant to be duly notified of the pendency of the action by duly serving the proper process of the court on its trustee. We must at least presume this to be so, in the absence of any showing to the contrary, as the facts disclose that the judgment was taken on the default of appellant. The law required the process of the court to issue against the appellant, under the circumstances, as the school township, and to be served, as provided, on its trustee. Section 6027, Burns' R. S. 1894 (4536, R. S. 1881). *City of Huntington* v. *Day*, 55 Ind. 7; *Vogel* v. *Brown Township*, 112 Ind. 299; *Vogel* v. *Brown School Township*, 112 Ind. 317. We are therefore bound to presume that the court found that the law in this respect had been complied with before it gave judgment against appellant on default.

The vital question, under the circumstances, is: Does the complaint, which wholly fails to attribute any fraud or wrong to the appellee, state a cause of action, upon the theory on which it proceeds? The doctrine is universally recognized that a judgment obtained by fraud may be annulled, and courts of equity are invested with inherent powers, without regard to statutory provisions, to annul and vacate such judgments. It is also true that there are cases and circumstances under which such courts have exercised this power as to judgments rendered by mistake. *English* v. *Aldrich*, 132 Ind. 500. In the case

just cited, it is said: "While the court possesses this power, it will not in all cases be exercised. It should be exercised only in clear cases, where the party asking it is himself without fault, and where he proceeds without unreasonable delay after the discovery of the fraud or mistake."

Equity, however, will not interpose to relieve a complaining party from a judgment at law on the ground that he had a valid defense to the action wherein the judgment was rendered which was not interposed by reason of his own negligence. As a general rule, every person is required to look after his own rights, and to see that they are vindicated in due season, and in a proper manner; consequently, where a defendant has the proper means of a defense in his power, but neglects or fails to employ such means for that purpose, and suffers a judgment to be recovered against him in a proper tribunal, he is forever precluded. *Center Township* v. *Board, etc.*, 110 Ind. 579, and authorities there cited.

The fraud that will annul or vacate a judgment, is not that arising out of the facts which were actually or necessarily in issue in the cause in which it was rendered. The rule is that the fraud which vitiates a judgment, must arise out of the acts of the prevailing party, by which his adversary has been prevented from presenting the merits of his side of the case, or by which the jurisdiction of the court' has been imposed upon. Or, in other words, the fraud relied on must relate to some act in securing jurisdiction, or as to something done concerning the trial, or the judicial proceedings themselves; and the rule has no application to cases of fraud in the transaction, or matters connected with it, out of which the legal controversy arose. Bigelow on Frauds, 170; Black on Judgments, section 370; *Sanders* v. *State*, 85 Ind. 318;

Freeman on Judgments, section 486; *Gray* v. *Barton*, 62 Mich. 186, 28 N. W. 813; Story's Eq. Jur. (10th ed.), sections 252 and 1575; *Zellerbach* v. *Allenberg*, 67 Cal. 296, 7 Pac. 908; *Stratton* v. *Allen*, 16 N. J. Eq. 229. Freeman, in the section above cited, states the rule as follows: "To entitle a party to relief from a judgment or decree, it must be made evident that he had a defense upon the merits, and that such defense has been lost to him, without such loss being 'attributable to his own *omission, neglect*, or *default*.' The loss of a defense, to justify a court of equity in removing a judgment, must in all cases be occasioned by the fraud or act of the prevailing party, or by mistake or accident on the part of the losing party, unmixed with any fault of himself or his agent."

Appellant is a public corporation with power to sue, and subject to be sued, and certainly the rule asserted by the authorities on the question involved is as applicable to a public corporation as it is to a private one, or to a natural person. Forney at the time appellee commenced his action to recover on the warrant, was the trustee of this school township, and, although not the township, he was at least its special agent, with limited statutory authority. Notice to him of the pendency of the action, in the manner provided by law, must be deemed notice to the township. When appellee instituted his suit on the warrant, and legally notified appellant through its proper agent of the fact, he thereby challenged it to respond in like manner as any other defendant would have been required, and assert any defense which it then had to the action. The discharge of this duty rested, under the law, on its trustee. This was within the scope of the power and authority of his agency, and this duty he, with full knowledge of the existing facts, neglected or failed to perform; consequently, the loss of appellant's de-

fense to the cause of action resulted from the negli-
gent act of its own agent, and in no sense from any act
or wrong of the appellee.

The contention of appellant's counsel that its hands,
under the circumstances, were tied, and it could do
nothing, if in a legal sense could be said to be true,
may be met with the answer that this condition, in
which it is said to have been placed, must be attrib-
uted to its own agent or representative, and in no way
to appellee.   The decision in the case of *Cicero Town-
ship* v. *Picken,* 122 Ind. 260, is an authority quite in
point on the question here involved.   That was an
action to vacate a judgment obtained, as alleged, by
fraud.   It appeared that the judgment was rendered
on a township warrant in a suit in which no summons
had been issued.   That a firm of attorneys, one of
whom was a surety on the official bond of the town-
ship trustee, appeared in the action for the township,
and filed an answer whereby the legality of the war-
rant in suit was admitted.   That in fact, as averred, the
said warrant was invalid by reason of its being issued
in violation of law, as specified in the complaint, for
which the trustee was liable on his bond, and that he
was insolvent at the time the judgment was rendered,
etc.   This court, in an opinion affirming the judgment
below, said:   "It is not alleged that the appellant's
trustee, and the appellees, had any understanding,
or agreement, in reference to the institution of the
action, or the appearance of the appellant without
notice, and without such an averment we must infer
that there was no such understanding; and, if not, the
appellees cannot be made to suffer for what the ap-
pellant did, no difference what may have been the pur-
pose of its agent having authority to act for it in the
matter.

"It seems that one of the two attorneys who ap-

peared for the appellant, and filed its answer, was a surety on the bond of the appellant's then trustee, but it is not averred that the appellees knew that fact, or had anything to do with the selection of the attorneys who appeared for the appellant.

"Suppose it were conceded that the then trustee employed the attorneys who appeared to the action for the purpose of enabling the appellees to obtain judgment promptly, and without litigation, *but without knowledge on the part of the appellees that what was being done was not in good faith,* the appellees could not be prejudiced thereby; it not appearing that the court was in any way deceived by the action of those representing the appellant, and thereby induced to render a different judgment than it would otherwise have rendered.   *   *   *

"*There are no facts alleged tending to establish bad faith on the part of the appellees, either in the institution of their said action, or its prosecution to final judgment.*   If the contention of appellant's counsel can be maintained, judgments rendered against public corporations are of no binding force, and have no validity, if the corporation, as it turns out, could have successfully defended the action on the ground of want of power to enter into the obligation sued on." (Our italics.)

It may be said, perhaps, in passing, that the loss which appellant will sustain, if compelled to pay the judgment, will be the result, to an extent, at least, of its misfortune in having selected, through its legal voters, a man for its agent or representative, who, if the facts alleged are actually true, was recreant to his trust, and one ready and willing at the instigation of designing men to perpetrate a criminal wrong.

The complaint, for the reasons stated, is insufficient, and the demurrer therefore was properly sustained, and the judgment is affirmed.