Elliott JAMES, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 581S127.

Supreme Court of Indiana.

April 19, 1982.

Harriette Bailey Conn, Public Defender, Paul Levy, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Murder in the Second Degree, Ind.Code § 35–1–54–1 (Burns 1975), and sentenced to a term of fifteen (15) to twenty-five (25) years imprisonment. This appeal from the denial of post conviction relief presents one issue.

On March 31, 1976 Defendant and four others were charged with Murder in the First Degree and Murder in Perpetration of Robbery with respect to the homicide of David Clay on February 23, 1976. On July 20, 1976 pursuant to a plea agreement, Defendant agreed to testify against his codefendants and to plead guilty to Murder in the Second Degree in exchange for a sentence of fifteen (15) to twenty-five (25) years imprisonment and a *nolle prosse* of the Felony Murder charge.

Prior to accepting the plea, the trial court held a hearing. The court inquired of the Defendant about his age and educational background. He asked if Defendant understood the terms of the plea agreement, if he had signed it voluntarily, and if he had reviewed the matter with his attorney. The responses were affirmative. The trial court then explained Defendant's rights to

him. Defendant understood that he had a right to a speedy public trial by jury and that the verdict would have to be unanimous. The trial court explained the concept of trial by jury and the juror selection process. The trial court also explained what the State would have to prove in order to sustain a conviction upon each offense charged in the indictment and the State's burden of proof. He also reviewed the lesser included offenses and their penalties and the criminal liability of one who aids and abets in the commission of a felony. Defendant, represented by counsel, answered in the affirmative when asked if he understood these things.

The trial court's address to the defendant further informed him of his right to take the stand and to subpoena witnesses and his right to remain silent. Defendant understood these rights and that by pleading guilty he was convicting himself. Then the following occurred:

"BY THE COURT: Now, in view of everything that I've told you, Mr. James, is it still your desire to tender a plea of guilty to MURDER IN THE SECOND DEGREE?

"A. Yes, sir; it is.

\* \* \* \* \* \*

"BY THE COURT: Now, before I accept a plea from you, it is required that I have some reason, some basis for accepting a plea. I want you to tell me in your own words exactly what if anything you did in connection with that robbery and killing.

"A. All right. On that date, the 23rd, four guys that were Rozelle Barber, Lorenzo Stone, Ira Rogers, and Johnny Williams, and myself, we went to the place Mona's Lounge in order to rob it. So Rozelle Barber stayed outside as a lookout; it was his job to come in and get the money. All right. At that time, the other four and myself, you know, the other three and myself walked inside the place to rob it and announced a stickup. And David Clay was sitting, I think about three, about three stools farther down the bar. So where he was—Lorenzo Stone walked straight into the back, and I

walked in and went to the bar. And the other two fellas, they walked close to the wall. We could see just about everyone, and we announced a stickup. Everybody was supposed to get on the floor, but David Clay, he didn't lay on the floor, and he tried to stop the robbery. And when he did that, the shooting erupted. I had jumped across the bar on the other side of the bar. Shooting erupted, so everybody running out of the place. And I turned around and tried to run out of the place. Lorenzo Stone was coming back shooting, and I ran out of the place, too. We ran then over to another fella's house, and that's when we found out the next day the man got killed. That's it." (R. at 41–43)

Without objection, a statement, which Defendant gave to the police on February 26, 1976, was admitted. The statement is not in the record; however, it appears from the record that Defendant had stated that he was unarmed and did not enter the tavern. Defendant made it clear that this part of his statement to the police was inaccurate.

Lastly, in response to the trial court's questioning, Defendant stated that he understood that he might serve twenty-five (25) years in prison.

Defendant contends that his plea was not voluntary because the trial court did not comply with Ind.Code § 35–4.1–1–4(a) (Burns 1975):

"The court shall not accept a plea of guilty without first personally addressing the defendant and determining that the plea is voluntary. The court shall address the defendant and determine whether any promises, force or threats were used to obtain the plea."

Specifically Defendant complains that the trial court did not ask him whether any promises, force, or threats influenced the plea and therefore, that the trial court violated *Collins v. State*, (1979) Ind.App., 394 N.E.2d 211, 214:

"By failing to ask Collins if his plea was made in response to promises by the po-

lice or prosecutor, the court failed to comply with both the Supreme Court's *Watson v. State*, (1973) 261 Ind. 97, 300 N.E.2d 354 decision and the mandates of Ind.Code § 35–4.1–1–4(a). This alone requires our reversal."

At the hearing on the post conviction petition, Defendant testified that he pled guilty because his attorney urged him to do so and because his codefendants made threats against him and his family.

The parties cite us to several cases, *Turman v. State*, (1979) Ind., 392 N.E.2d 483, *Clark v. State*, (1978) Ind., 383 N.E.2d 321, and *Neeley v. State*, (1978) 269 Ind. 588, 382 N.E.2d 714, overruled in *German v. State*, (1981) Ind., 428 N.E.2d 234, 237, which treat claims of inadequate advisements of rights under Ind.Code § 35–4.1–1–3.[1] Our research reveals that *Collins v. State, supra,* and *Nash v. State*, (1981) Ind.App., 429 N.E.2d 666 are the only cases which construe and apply the second sentence of Ind. Code § 35–4.1–1–4(a), which is relevant to Defendant's assignment of error.[2]

■ The State contends that Ind.Code § 35–4.1–1–4(a) is designed to protect defendants against improper coercion by police or prosecutors; not third parties. We agree with this interpretation of the statute. There may be many reasons why a defendant chooses to plead guilty. However, for purposes of a determination of voluntariness, not every motivation that may be characterized as a but/for cause of the guilty plea is relevant. *Corbitt v. New Jersey*, (1978) 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466; *Brady v. United States*, (1970) 397 U.S. 742, 756–58, 90 S.Ct. 1463, 1473–74, 25 L.Ed.2d 747, 761–62. *See Bordenkircher v. Hayes*, (1978) 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604, *McMann v. Richardson*, (1970) 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763.

■ Ind.Code § 35–4.1–1–4(a) speaks in terms of "promises, force, or threats." In

this respect it codifies our decisions in *Dube v. State*, (1971) 257 Ind. 398, 275 N.E.2d 7 and *Watson v. State*, (1973) 261 Ind. 97, 300 N.E.2d 354, which require the trial court to take steps necessary to learn whether the State has made promises of leniency to the defendant. In the case at bar Defendant has not shown how he was harmed by the trial court's failure to inquire about promises, force or threats. He does not assert any improper activity by the State or on its behalf. The trial court, which accepted the guilty plea, had full knowledge of the plea bargain which Defendant had struck with the State. In *Dube* and *Watson*, the courts sentenced the defendants to imprisonment without the knowledge that the prosecutor had promised suspended sentences. We view the trial court's failure to inquire specifically into this area as, at worst, a latent defect, which does not detract from a record which shows that Defendant was informed of and understood the full panoply of constitutional rights and the ramifications of his waiver of those rights. *Clark v. State*, (1978) Ind., 383 N.E.2d 321, 322.

The judgment of the trial court is affirmed.

GIVAN, C. J., and PIVARNIK, J., concur.

DeBRULER, J., dissents with opinion in which HUNTER, J., concurs.

DeBRULER, Justice, dissenting.

Indiana Code § 35–4.1–1–4 requires the trial judge before whom the accused stands to make a plea of guilty to "address the defendant and determine whether any promises, force or threats were used to obtain the plea." This statutory mandate requires the judge to ask the accused questions which will cause him to respond by revealing whether he has received any such promises or threats. Nothing less can satisfy the requirement of the statute.

---

1. We note that the variance in the standard of review set out in these cases had been resolved in *Mathis v. State*, (1980) Ind., 406 N.E.2d 1182, 1184.

2. The record at bar differs significantly from *Collins*, where the court also found noncompliance with Ind.Code § 35–4.1–1–3.

That part of the guilty plea record which reveals a colloquy which even approaches this matter of promises and threats is the following:

"BY THE COURT: Do you recall having signed that Plea Agreement?

A. Yes, sir.

BY THE COURT: And was that signed voluntarily?

A. Yes, it was.

BY THE COURT: After your attorney had taken some time to go over the matter with you?

A. Yes, sir."

Based upon this record, it is evident that the requirement of the statute to inquire into the matter of promises and threats was not complied with and that there is no legally valid determination that this plea was made voluntarily.

A plea of guilty is an admission or confession of guilt made in court before a judge. It is also a waiver of specific constitutional rights. As an admission or confession of guilt, it cannot be accepted by the judge consistent with the privilege against self-incrimination in the absence of a contemporaneous determination that the decision to admit guilt was free and voluntary, and not induced by any violence, threats, promises, or other improper influences. *Brady v. United States*, (1970) 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. Federal constitutional law requires the record of a state plea proceeding to affirmatively disclose that the plea was entered voluntarily. *Boykin v. Alabama*, (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. When the petitioner presents a plea proceeding record deficient in this respect, he has sustained his burden of showing involuntariness requiring that he be granted the right to withdraw his plea of guilty. *Brimhall v. State*, (1972) 258 Ind. 153, 279 N.E.2d 557; *Campbell v. State*, (1975) 262 Ind. 594, 321 N.E.2d 560. This record is deficient in this regard. For the reasons that this plea is tainted by the failure of the plea judge to comply with our statute and by the inadequacy of the record, I would reverse and permit petitioner to withdraw his plea of guilty.

I also dissent, because I do not regard as sound the construction given Ind.Code § 35–4.1–1–4(a). The majority concludes that this statute concerns itself only with promises and threats by police or prosecutors. I see nothing in the statute to support this restrictive interpretation. For example, if threats be made against the accused or his family by relatives and friends of the putative victim, witnesses, or others having an interest in the outcome of the case, those threats are material to a rational determination of whether plea is being made voluntarily. Indeed, prior to the enactment of this modern statute, this Court held that a plea induced by fear of violence from angry and excited mobs was involuntary in the legal sense. *Sanders v. State*, (1882) 85 Ind. 318. This issue, has been debated by English and American judges for more than three centuries. *Bram v. United States*, (1897) 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568. I regard the *Sanders* case as placing this State on that side of the question which renders promises engendering hope for benefit and threats creating fear and terror as being material in making a judicial determination of the voluntariness of a plea of guilty to a criminal charge. A plea induced by improper promises or threats by private citizens lacks the essential quality of trustworthiness and should not be received in an Indiana court of law.

HUNTER, J., concurs.