STATE ex rel. BURFORD, Warden, v.
SULLIVAN, District Judge, et al.

No. A-11007. May 5, 1948.
(193 P. 2d 594.)

366

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for petitioner.

Ewing C. Sadler, of Sulphur, for respondents, Sam Sullivan, Judge, and W. A. Lackey, Judge.

BRETT, J. The State of Oklahoma, on relation of the warden of the State Penitentiary, filed a verified petition in this court asking that the court assume original jurisdiction for the purpose of issuing a writ of prohibition directed to the respondents, Honorable Sam Sullivan, District Judge of Atoka County, and Honorable W. A. Lackey, District Judge of Pittsburg County, prohibiting them from proceeding in connection with certain actions concerning one Harrold Lee Motley as hereinafter set forth.

The verified petition alleged, in substance, that Harrold Lee Motley, in the year 1936, was charged with the crime of murder in Atoka county; that after a preliminary hearing, where he was represented by counsel, he was bound over for trial to the district court where an information was duly filed; that after the said Harrold Lee Motley had spent several days in the county jail of Atoka county, and on the 27th day of October, 1936, according to the appearance docket and minutes of the court, the said Motley appeared before the district court with counsel and after being advised of all of his constitutional rights and the severity of punishment, insisted upon entering his plea of guilty to the charge of murder, whereupon the court accepted the plea and sentenced

the defendant to serve a term of life imprisonment in the State Penitentiary where he is now incarcerated.

That on October 2, 1945, the Governor of the State of Oklahoma granted Motley a 60 days' leave of absence; that thereafter said leave was extended at various times down to and including December 17, 1947, at which time the leave of absence was revoked by the Governor on account of the refusal of Motley to make the reports to the Pardon and Parole Board which were a part of the requirements agreed to by the defendant in accepting the leave of absence.

The verified petition further alleged that prior to October 14, 1947, the said Motley filed a motion in the district court of Atoka county asking the court to set aside, vacate and hold for naught the original judgment and sentence imposing life imprisonment on the said Motley; that the respondent, Judge Sullivan, after a hearing on said motion, on October 14, 1947, entered an order captioned as follows:

"Journal Entry of Judgment Sustaining Defendant's Motion to Vacate Void Judgment and Sentence."

The concluding part of the above mentioned journal entry reads:

"Whereupon the Court finds that the purported judgment and sentence pronounced upon defendant herein was and is void, for the reason that said defendant was deprived and not fully advised of his constitutional and legal rights, as a result of which defendant's plea was not entered voluntarily, thereby depriving the Court's jurisdiction to accept said plea and enter judgment and sentence thereon.

"It is therefore ordered, adjudged and decreed by the Court that defendant's motion to set aside, vacate and hold for naught the purported judgment and sentence

herein be and the same is hereby sustained, granted and allowed and the said defendant, Harrold Lee Motley, is hereby released therefrom, subject to any further official action the County Attorney may deem necessary and proper. And it is further ordered that the Warden of the State Penitentiary, and he is hereby directed, to release said defendant, Harrold Lee Motley, No. 35002, from his care custody and jurisdiction, subject only to any further order of the Court. It is further ordered that the Court Clerk cause certified copies of this order and judgment herein to be served on the said Warden of the State Penitentiary, at McAlester, Oklahoma."

That subsequent to the entry of the order by Judge Sullivan, the Attorney General advised the warden of the State Penitentiary that in his opinion the order was null and void and not to obey the same; that the Attorney General was never served a notice that the said Motley had filed a motion to set aside the original judgment and sentence and did not know that the same would be heard, although the said Motley was then a ward of the state and in the custody of the warden of the State Penitentiary, and neither was said warden made a party to the proceedings had before the district court of Atoka county; that the order entered by the district judge of Atoka county on October 14, 1947, is not a final order of the district court and therefore not an order that could be appealed by the State of Oklahoma under the provisions of Title 22 O. S. 1941 §§ 1052, 1053, and that the writ of prohibition should be issued to prevent the enforcement of a void and illegal order by an inferior court.

That on or about January 8, 1948, the said Motley filed a petition for writ of habeas corpus before the respondent, Honorable W. A. Lackey, district judge of Pittsburg county, asking for his release from the penitentiary by virtue of the above mentioned void and illegal

order issued by the district court of Atoka county, and that on a hearing on this petition, the Honorable W. A. Lackey indicated that he felt bound to recognize and give legal effect to the order entered by Judge Sullivan, but that he continued the further hearing of said habeas corpus petition to January 21, 1948, but indicated that unless a writ of prohibition is issued by the Criminal Court of Appeals, that he would release the said Motley from prison pursuant to the order issued by Judge Sullivan.

The verified petition further alleged that many terms of court had expired since October 27, 1936, the date of the original judgment and sentence and that the said Motley has partially executed the original judgment and sentence by serving approximately nine years on said judgment; that the district judge of Atoka county had no jurisdiction to pass upon the custody of prisoners in the hands of the warden of the Penitentiary at McAlester, and that the attempt to secure and exercise jurisdiction in such manner and to free prisoners from the custody of the warden constitutes an usurpation of authority and jurisdiction not given to the respondent as judge of the district court of Atoka county, and is an attempt to make an unauthorized application of judicial force.

After a consideration of the verified petition, this court assumed original jurisdiction and issued an alternative writ of prohibition directed to the respondents. On the date set for hearing, a response was filed in which it was alleged:

"Respondent Sullivan further moves this Honorable Court to quash the alternative writ directed against him and moves that it be permanently denied for the reason that the matters herein are properly before the District

Court of Pittsburg County on a habeas corpus proceeding and he is not a party thereto.

"Respondent Lackey further moves this Honorable Court to quash the alternative writ directed against him and moves that it be permanently denied for the reason that he retains jurisdiction over Harrold Lee Motley in a habeas corpus proceeding, his Court being a court of concurrent jurisdiction in such matters with this Honorable Court.

"Said respondents further deny they have or are about to act in any manner in the premises inconsistent with the law and ends of justice."

At the hearing before this court, evidence was introduced and arguments of counsel were presented. Additional time was given to counsel to brief the points of law involved and able briefs have been filed.

At the time of the hearing, an order was entered denying the petition for writ of prohibition against the respondent Honorable W. A. Lackey, judge of the district court of Pittsburg county, for the reason that the district court under the Constitution has concurrent jurisdiction with the Criminal Court of Appeals in habeas corpus matters brought before them by persons allegedly restrained of their liberty in their district court judicial district and for that reason prohibition will not issue to control their action in such cases. State ex rel. Wester v. Caldwell, 84 Okla. Cr. 334, 181 P. 2d 843, 844.

The evidence disclosed that on or about September 4, 1936, the infant son of the defendant died in Atoka, allegedly from the effects of a beating administered by the defendant. The defendant was arrested and incarcerated in the county jail at Atoka and charged by preliminary complaint with the crime of murder. At the preliminary hearing he was represented by his attorney,

I. L. Cook of Atoka. At the conclusion of the hearing, the defendant was ordered held to await trial in the district court of Atoka. Shortly after the alleged crime was committed, the wife of the defendant sued him for a divorce and Mr. Cook was also attorney for the defendant in that action. On the morning of October 27, 1936, the wife was granted a divorce from the defendant, and on the same day two or three hours after the conclusion of the divorce proceeding, the defendant entered his plea of guilty to the charge of murder and was sentenced by the district court of Atoka county to serve a term of life imprisonment in the State Penitentiary at McAlester. The minutes of the court proceedings recites that the defendant appeared in person and with his attorney I. L. Cook and after being advised of his rights entered his plea of guilty.

The defendant's evidence was given by affidavit in which he stated:

"That he was represented by I. L. Cook, attorney, Atoka, Oklahoma, at his preliminary hearing; that the extent of his legal advice was not to plead guilty as he would not be given over ten or fifteen years if tried by a jury; that his wife sued him for divorce immediately after said charge of murder was filed against him and she was decreed a divorce and all his property on October 27, 1936, some two or three hours before he entered his plea of guilty to said charge of Murder; that another colored man by the name of 'Sonny' Hughes had made several trips to see him in jail and advised him repeatedly to plead guilty and that the court wanted him to enter such a plea and that acting upon such advice he entered such a plea; that it was late in the evening when he appeared in court to enter his plea; that neither his attorney of record nor any other attorney acting in his behalf was in the court room when he entered his plea; that upon entering the court room said 'Sonny Hughes' ad-

vised the Court that 'this is the boy who wants to plead guilty;' that the District Judge informed him that he could sentence him either to life imprisonment or death in the electric chair if he entered such a plea; that he replied that he would enter his plea of guilty and throw himself upon the mercy of the court; that thereupon the District Judge accepted his plea and sentenced him to serve a sentence of life imprisonment in the State Penitentiary at McAlester, Oklahoma; that he does not remember the information being read to him; that he was never served with a copy or list of the witnesses in chief to be used by the State in his trial, together with a list of their respective post-office addresses; that the court did not advise him that he was entitled to the right of trial by jury and that if found guilty the jury could assess the punishment; that the court did not advise him that he was entitled to have his attorney present at every stage of the proceedings and that if he wanted an attorney or could not afford one the Court would appoint an attorney for him and he would be paid by the State. * * *''

The Honorable Roy Paul, who was district judge of Atoka county at the time the defendant was sentenced, stated that he could not remember much about the case due to the lapse of time but that he knew said defendant had been represented by Attorney I. L. Cook, but would not state whether Cook was personally present in the courtroom when defendant entered his plea and was sentenced.

I. L. Cook, attorney of Atoka, testified that he represented defendant in the divorce case and also represented him in the preliminary hearing on the murder charge; that he was present with the defendant in the courtroom when the divorce decree was granted; that defendant at that time wanted to enter a plea of guilty to the murder charge, but that he told the defendant that, in his opinion, if he was tried to a jury he would not re-

ceive over ten years, and he had defendant sent back to jail; that the defendant had talked to him at other times about entering a plea of guilty and had insisted on pleading guilty, but that he told the defendant he would be a fool to do so; that he was not in the courtroom at the time the defendant was sentenced; that Judge Paul called him over the telephone and told him the defendant was in the courtroom to plead guilty and that he should come over to the courtroom; that he told Judge Paul that he had advised the defendant against pleading guilty and had tried to get him not to do so and that if the defendant, contrary to his advice, was going to plead guilty, that he was washing his hands of the whole affair and would not come to court to represent defendant any further.

To refute the statement of the defendant that he was inexperienced in court proceedings and had never been in court or charged with a crime before, the Attorney General introduced in evidence the statement given by the defendant to the record clerk at the State Penitentiary at the time of his entrance into that institution. In this statement the defendant stated that he was represented by Mr. Cook at the time he was sentenced and he further stated that he had served a term of imprisonment in the State Penitentiary of Kansas at Lansing, and in this connection, the Attorney General introduced the record of the defendant showing that he was convicted on May 5, 1923, in the State of Kansas for the crime of robbery in the first degree under the name of Charlie Johnson and was sentenced to serve a term of twenty-one years in the State Penitentiary; that he was paroled on January 23, 1932, and later discharged from said sentence on August 27, 1936, which was just one week before the alleged crime of murder was committed in Atoka county. In

this statement there was further shown that the defendant spent fifty-two days in the county jail of Atoka county before he entered his plea of guilty.

The motion to vacate the judgment filed on behalf of the defendant in the district court of Atoka county in October, 1947, together with the journal entry filed by the district court sustaining said motion to vacate said judgment, were admitted as evidence on behalf of the respondents.

At the commencement of the hearing counsel for the respondents insisted that the writ of prohibition should not be issued for the reason that the petitioner had an adequate remedy at law by appeal from the order of the district court vacating the judgment; and secondly, that if he did not have the right to appeal from such order that the writ of certiorari would have been the proper remedy to be invoked by the petitioner to have the entire record of the proceedings before Judge Sullivan certified to this court for review.

In the case of State ex rel. Wester v. Caldwell, supra, the law pertaining to the prerogative writ of prohibition is stated as follows:

"A writ of prohibition is a common-law writ, as a writ of prohibition is not mentioned in Oklahoma statutes.

"The remedy under a writ of 'prohibition' is limited to cases where act sought to be prohibited is of a judicial nature, in absence of constitutional or valid statutory provision to the contrary, and is directed against the encroachment of jurisdiction by inferior courts, for the purpose of keeping such courts within the bounds prescribed for them by law. * * *

"Writ of 'prohibition' may not issue to prevent inferior court from erroneously exercising jurisdiction, but

only to prohibit proceedings as to which inferior tribunal is wholly without jurisdiction, or threatens to act in excess of jurisdiction."

In Rose v. Arnold, 183 Okla. 236, 82 P. 2d 293, the Oklahoma Supreme Court stated:

" 'Prohibition' is an extraordinary judicial writ issuing out of a court of superior jurisdiction to keep inferior courts and tribunals within the limits and bounds prescribed for them by law, and its use in proper cases should be upheld and encouraged, since it is of vital importance to the due administration of justice that every tribunal vested with judicial functions should be confined to the exercise of those powers with which it has been by law intrusted. Lattimore v. Vernor, 142 Okla. 105, 288 P. 463."

The Supreme Court of Oklahoma, in its latest expression on this matter in the case of Harris Foundation, Inc., v. District Court of Pottawatomie County, 196 Okla. 222, 163 P. 2d 976, 978, 162 A. L. R. 272, stated:

"Prohibition is the proper remedy where an inferior tribunal assumes to exercise judicial power not granted by law, or is attempting to make an unauthorized application of judicial force, and the writ will not be withheld because other concurrent remedies exist; it not appearing that such remedies are equally adequate and convenient."

In 14 C. J. S., Certiorari, § 4, subdivision (e), page 126, it is stated:

"Although similar to prohibition in that it will lie for want or excess of jurisdiction, certiorari is to be distinguished from prohibition by the fact that it is a corrective remedy used for the reexamination of some action of an inferior tribunal, and is directed to the cause or proceeding in the lower court and not to the court itself, while prohibition is a preventive remedy issuing to restrain future action, and is directed to the court itself. Statutory provisions changing the common-law features

of prohibition sometimes create further distinctions. So, where an act beyond or in excess of jurisdiction has been done and made of record, the remedy may be by certiorari to quash such record, but if the act is only threatened the remedy is by writ of prohibition. * * *"

The right of the state to take an appeal to the Criminal Court of Appeals is governed by statute and it may not appeal except in cases provided by the statute. Title 22 O. S. 1941 § 1053 gives the statutory authority for the taking of appeals by the state. It is there provided:

"Appeals to the Criminal Court of Appeals may be taken by the State in the following cases and no other:

"1. Upon judgment for the defendant on quashing or setting aside an indictment or information.

"2. Upon an order of the court arresting the judgment.

"3. Upon a question reserved by the State."

Since the order of the respondent, Judge Sullivan, sustaining the motion to vacate the judgment was not one of the class of final orders from which an appeal would lie to the Criminal Court of Appeals as set forth in the statute, then no appeal was available to the state from such order. It was shown by the evidence that the respondent, Judge Sullivan, had directed the warden of the State Penitentiary to release Motley from the State Penitentiary in accordance with his order of October 14, 1947, and the respondent has stated that if it was within his power he was going to enforce his order of October 14, 1947, which the Attorney General contends would amount to an unauthorized application of judicial force, and an attempt to enforce an order made by the respondent Sullivan in excess of his jurisdiction.

This brings us then to the decisive question in this proceeding, to wit: Did the district court of Atoka county have jurisdiction to hear the motion to vacate the judgment filed in the district court of Atoka county, and enter an order vacating said judgment under the facts as hereinabove shown?

Counsel for the respondent states that the motion to vacate the judgment filed by Motley was based upon the principles of the ancient common-law writ of error coram nobis.

In the case of State ex rel. Attorney General v. Hurst, 59 Okla. Cr. 220, 57 P. 2d 666, this court held:

"The functions of a writ of error coram nobis are limited to an error of fact for which the statute provides no other remedy, which fact did not appear of record or was unknown to the court when judgment was pronounced, and which, if known, would have prevented the judgment, and which was unknown and could not have been known to the party by the exercise of reasonable diligence in time to have been otherwise presented to the court, unless he was prevented from so presenting them by duress, fear, or other sufficient cause.

"The remedy by a writ of error coram nobis is supplanted and excluded by statute in all cases where the statute affords a remedy by motion for new trial. * * *

"Writ of coram nobis cannot be utilized to secure new trial on ground of newly discovered evidence, although time for moving for new trial has expired.

"A writ of error coram nobis cannot be invoked for the purpose of revoking a judgment of conviction by showing that a certain juror, prior to having qualified as such, had formed or expressed an opinion unfavorable to the defendant.

"Only relief which can be granted under petition for writ of error coram nobis is the setting aside of judgment and the granting of a new trial."

In the body of the opinion it is stated:

"The functions of the writ of error coram nobis are strictly limited to the correction of errors of fact for which the statute provides no other remedy, and which facts do not appear of record or were unknown to the court at the time of pronouncing judgment, and which, if known, would have prevented the judgment, and which were unknown and could not, by the exercise of reasonable diligence, have been known to the defendant in time to have been otherwise presented to the court, unless he was prevented in so doing by duress or fear or other sufficient cause. Alexander v. State, 20 Wyo. 241, 123 P. 68, Ann. Cas. 1915A, 1282; State ex rel. v. Swindall, supra [33 Okla. Cr. 210, 241 P. 456]; People v. Reid, 195 Cal. 249, 232 P. 457, 36 A. L. R. 1435; People v. Paysen, 123 Cal. App. 396, 11 P. 2d 431.

"Judge Freeman, discussing the office of this writ in Freeman on Judgments, par: 94, says:

" 'This writ does not lie to correct any error in the judgment of the court, nor to contradict or put in issue any fact directly passed upon and affirmed by the judgment itself. If this could be, there would be no end to litigation. * * *

" 'The writ of error coram nobis is not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication made while some fact existed which, if before the court, would have prevented the rendition of the judgment, and which, without any fault or negligence of the party, was not presented to the court.'

"It has been said that the writ of error coram nobis will not be granted except where it clearly appears that the petitioner had a valid defense in the facts of the case.

"In Sanders v. State, 85 Ind. 318, 44 Am. Rep. 29, the court said:

" 'It is our opinion that the courts have the power to issue writs in the nature of the writ coram nobis, but

that the writ can not be so comprehensive as at common law, for remedies are given by our statute which did not exist at common law—the motion for a new trial and the right of appeal—and these very materially abridge the office and functions of the old writ. These afford an accused ample opportunity to present for review questions of fact, arising upon or prior to the trial, as well as questions of law; while at common law the writ of error allowed him to present to the appellate court only questions of law. Under our system all matters of fact reviewable by appeal, or upon motion, must be presented by motion for a new trial, and can not be made the grounds of an application for the writ coram nobis. Within this rule must fall the defense of insanity as well as all other defenses existing at the time of commission of the crime. Within this rule, too, must fall all cases of accident and surprise, of verdicts against evidence, of newly discovered evidence, and all like matters.' "

In 30 A. L. R. 686, it is stated:

"Except where expressly or impliedly abolished, or supplanted by statute, the writ of error coram nobis is a common-law remedy afforded upon application to the trial court, for the correction of errors of fact, unknown at the time of trial to the party seeking relief and to the court."

The case of People v. Vernon, 9 Cal. App. 2d 138, 49 P. 2d 326, 327, cited in the brief of counsel for respondents, has been read with interest. In that case the writ of error coram nobis was denied upon several grounds, the principal one being that the application made four and one-half years after conviction was not within a reasonable time.

In the opinion it is stated:

"It is apparent that the remedy which the applicant sought in the lower court was inclusive of, but withal comparatively but a very small part of, a remedial relief

which, in the early stage of the development of common-law procedure, was obtainable by means of a 'writ of error, coram nobis'; the use of which was recognized and permitted solely because of the absence at that time of the right to move for a new trial and the right of appeal from the judgment. In that particular situation, the writ actually issued. Not that in appropriate circumstances such a writ may not now properly issue in this state (People v. Superior Court, 4 Cal. 2d 136, 47 P. 2d 724; Adler v. State, 35 Ark. 517, 37 Am. Rep. 48; Sanders v. State, 85 Ind. 318, 44 Am. Rep. 29; State v. Calhoun, 50 Kan. 523, 32 P. 38, 18 L. R. A. 838, 34 Am. St. Rep. 141; monographic note, 97 Am. St. Rep. 362, 372); but that the issuance of such a writ, as such, is unknown to the ordinary practice, is clearly indicated, if not attested, by a reference to the several cases in which a right to relief of the character of that here sought has been the subject of inquiry; from all of which it is manifest that that which remains of the relief which ordinarily was available as part of the original common-law remedy of 'writ of error, coram nobis,' is made equally available, not necessarily, as formerly, by the issuance of the writ, but simply by the legal machinery attendant upon a motion to vacate the judgment. It therefore results that, although the relief sought be of the nature of that included within and formerly afforded by a writ of error, coram nobis, because of its comparatively ancient origin and its correspondingly relatively recent disuse, the mystery and the magic which now apparently attach to such an appellation as applied to the proposed remedy are completely dispelled and obliterated by designating such remedy by the more simple and appropriate name of a motion to vacate the judgment. The practical result of such practice in effect and substance demonstrates that the relief that may be administered by the one form of procedure is identical with that in the other. Monographic note, 97 Am. St. Rep. 362; 2 R. C. L. 305. See also, People v. Mooney, 178 Cal. 525, 174 P. 325; People v. Reid, 195 Cal. 249, 232 P. 457, 36 A. L. R. 1435; and, generally, 5 Encyc. P. & P. 27 et seq. * * *

"As a matter of legal principle, the rule has been frequently announced that, in order that it may be effective and within the possibility of favorable action thereon a motion to vacate a judgment must be made 'within a reasonable time' after such judgment has been rendered; and in this state the concrete examples of what should be construed as 'a reasonable time' would seem to point to the conclusion that in the instant matter the delay has been so long that the prayer of the petitioner should not be granted. 18 Cal. Jur. 651, and authorities there cited. And in proceedings of the nature of that here under consideration in jurisdictions other than this state, it likewise has been ruled that, in circumstances such as are here present, the petitioner is entitled to no relief. State v. Stanley, 225 Mo. 525, 126 S. W. 475; Alexander v. State, 20 Wyo. 241, 123 P. 68, Ann. Cas. 1915A, 1282; Hawie v. State, 121 Miss. 197, 83 So. 158, 10 A. L. R. 205; State v. Latshaw, 291 Mo. 592, 237 S. W. 770; Washington v. State, 92 Fla. 740, 110 So. 259; monographic note, 97 Am. St. Rep. 362, 372; 5 Encyc. P. & P. 29."

It is apparent that the facts herein involved did not meet the elemental requirements for a writ of coram nobis for the following reasons: There is ample relief afforded by the statutes against the things complained of if those remedies had been pursued. The facts pleaded herein and relied upon are contrary to the facts that appear of record. A contradictory state of facts appearing in the record, it cannot be said that the true facts of this case were unknown to the court and that if the present contentions now made in the face of the record had been known to the court, the court would not have entered the judgment now complained of. It cannot be said the facts now sought to be established were unknown and with due diligence could not have been presented by the defendant or that the defendant was prevented from presenting the facts now relied upon by duress or force or other sufficient cause. We repeat that none of the elemental

requirements for a writ of coram nobis or such as would authorize the vacation of a judgment under the law of this state are presented as revealed by the record in this case. Further, as Judge Doyle aptly said in State ex rel. v. Hurst, supra, at page 226 of 59 Okla. Cr., at page 669 of 57 P. 2d:

"The writ of coram nobis and all proceedings in the nature of that ancient writ, having in view the setting aside of a final judgment of a court of competent jurisdiction, are very much limited in efficacy in jurisdictions such as ours, having statutory provisions regulating procedure granting new trials."

This brings us to the next question presented by the record as to whether in a proceeding for a writ of error coram nobis, or under the proceeding authorized by our statute to vacate a judgment, the district court of Atoka county had jurisdiction to vacate a judgment and sentence entered approximately eleven years before that date where the accused had served a part of the sentence. One of the most recent Oklahoma cases which has a direct bearing upon this question is the case of In re Gable, 73 Okla. Cr. 155, 118 P. 2d 1035, 1036, which is an able opinion by Judge Barefoot, wherein this court held:

"4. Where one is sentenced to the state penitentiary and in the judgment and sentence it is erroneously stated that the judgment and sentence shall run concurrently with a sentence from a different county rendered prior thereto, the trial court does not have the right or authority to vacate and set aside the judgment and sentence after the term of court at which a defendant was sentenced has expired and the defendant has begun the service of his term in the penitentiary under said sentence."

In the body of the opinion the court quoted from Rupert v. State, 9 Okla. Cr. 226, 131 P. 713, 714, 45 L. R. A., N. S., 60, as follows in part, to-wit:

" 'The question presented has been fully considered and answered by this court in the case of Rupert v. State, 9 Okla. Cr. 226, 131 P. 713, 714, 45 L. R. A., N. S., 60. The language of that opinion is as follows:

" 'The general power of a court to reconsider its judgment and sentence and reverse, vacate, or modify it at any time during the term in which it was rendered, or to increase or diminish the sentence which it has imposed, where the original sentence has not been executed or put into operation, is undeniable. Bish. New Crim. Proc. § 1288, and cases cited. This power is inherent in all courts of record. However, it would seem there must, in the nature of the power thus exercised by the court, be in criminal cases some limit to it. * * *

" ' "We think this provision of the Bill of Rights, and the principle therein declared, is broad enough to mean that no person can be twice lawfully punished for the same offense. The one follows from the other, and this constitutional provision is designed and intended to protect the accused from a double punishment as much as to protect him from two trials. For this reason we think that where a judgment and sentence has been executed and satisfied that ends the prosecution, exhausts the power of the court, and terminates its jurisdiction, and the court is without power or jurisdiction to render another judgment and sentence in the case.

" ' "The leading case upon this question is Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872. In that case the defendant was convicted of appropriating mail bags, of the value of less than $25, the punishment for which offense, as provided by statute, was imprisonment for not more than one year or a fine of not less than $10 or more than $200. The sentence was one year's imprisonment and $200 fine. The defendant was committed in pursuance of the sentence and paid the fine the day after his commit-

ment. On the second day after his commitment he was brought by habeas corpus before the same judge who sentenced him, who vacated the former judgment and sentenced the defendant anew to one year's imprisonment. The case came before the Supreme Court of the United States on habeas corpus, and the defendant was discharged, on the ground that, where a statute imposes as a punishment a fine or imprisonment, and the court has both fined and imprisoned the defendant, who thereupon pays the fine, the court has no power, even during the same term, to modify the judgment by imposing imprisonment instead of the former sentence. One of the alternative requirements of the statute having been satisfied, the power of the court as to the offense was at an end." * * *' "

At page 165 of 73 Okla. Cr., at page 1040 of 118 P. 2d, Judge Barefoot said:

"From the above cases it will be seen that even though the judgment and sentence was null and void, inasmuch as said judgment and sentence was not vacated during term-time and before a part of the penalty imposed had been served the trial court was without authority to set aside and vacate the same."

And then at page 166 of 73 Okla. Cr., at page 1040 of 118 P. 2d, he further said:

"Of course, we do not mean to hold that, if a judgment and sentence is actually null and void, a court of competent jurisdiction in a proper habeas corpus action cannot vacate the same and order the defendant released, but we do hold that a judgment and sentence in a criminal case cannot be vacated after term-time by the trial court, especially where a part of the penalty imposed therein has been served and satisfied."

Moreover, in Ex parte Meadows, 71 Okla. Cr. 353, 112 P. 2d 419, this court cited and quoted with approval from Yoder v. State, 66 Okla. Cr. 178, 90 P. 2d 669,

which quoted the hereinbefore referred to case of Rupert v. State.

In the case of Ex parte Pruitt, 41 Okla. Cr. 318, 273 P. 288, this court said:

"When a court pronounced judgment and sentence upon the verdict of a jury, and such judgment has been carried into execution, the power of the court as to that offense is at an end, and the court is without jurisdiction to render a second judgment and sentence upon the same."

In the body of the opinion the court said:

"The rule is well settled that, when a court has rendered judgment and imposed sentence upon a verdict of guilty or a plea of guilty, and such judgment and sentence has been carried into execution, the power of the court as to that offense is at an end, and the court is without jurisdiction to render a second judgment and sentence upon the same, Rupert v. State, 9 Okla. Cr. 226, 131 P. 713, 45 L. R. A., N. S., 60; Ex parte Myers, 12 Okla. Cr. 575, 160 P. 939. On these authorities the trial court was without jurisdiction to render the second judgment and sentence, or to correct the original judgment after such judgment had been executed, as in this respect the power of the court must be exercised when the original judgment is rendered."

In Tracy v. State, 24 Okla. Cr. 144, 216 P. 941, 943, the rule is clearly stated:

"Where judgment has been rendered and the defendant has suffered the penalty pronounced in the judgment in whole or in some substantial part, even during the term, the authority of the court rendering the judgment is at an end and the trial court is without jurisdiction to modify, suspend, or otherwise alter the judgment, except to set aside a judgment void on its face as shown by the record."

In no sense can the judgment and sentence herein involved be said to be void upon its face. The court had

jurisdiction of the subject matter, jurisdiction of the person of the defendant, and jurisdiction to render the judgment and sentence pronounced. The state of this record being such as it is and the defendant having suffered a substantial part of the penalty pronounced in the judgment herein involved, the authority of the trial court was at an end, and said court was without jurisdiction to vacate, modify, suspend or otherwise alter the judgment.

For this additional reason the relief herein sought by motion to vacate and set aside the original judgment and sentence herein imposed must be denied.

Moreover, this court can readily see why the district court of Atoka county entered the order vacating the judgment. There was no contest on the part of the county attorney to the motion. On the contrary, the county attorney appeared and told the court that he thought the court had jurisdiction to entertain the motion. Therefore, the court was not properly advised as to the legal reasons why the relief sought should not be granted. Under such conditions courts can very easily be misled. Secondly, it is equally apparent that the accused committed perjury in his testimony before Judge Sullivan where he testified that he was inexperienced in court proceedings and that he had never before that date been before any court. As hereinabove pointed out, the Attorney General proved that the defendant not only had been in court before but had been tried and convicted and served nine years' imprisonment in the State Penitentiary in Kansas. This situation, therefore, presents a picture of imposition on the trial court as well as counsel for petitioner. If the true facts of the picture of the petitioner's record had been known to either the trial judge or his counsel, the unreliable nature of his claim would not have

been made the basis of this attempt to effect his release upon a fabrication of ignorance and inexperience. This court would be subject to censure if it granted relief founded primarily on perjured testimony. In such a situation we shall follow the ancient maxim of "falsus in uno, falsus in omnibus"—false in one thing, to be disbelieved in all things.

Lastly, the record reveals that the defendant was ably represented, counselled and advised by I. L. Cook of Atoka, an able and respected member of the bar, not to enter a plea of guilty, but notwithstanding the defendant persisted in voluntarily entering a plea of guilty after having been protected in his rights, as revealed by this record.

We are therefore of the opinion that the prayer of the petitioner for a writ of prohibition directed against Honorable Sam Sullivan, district judge of Atoka county, prohibiting him from proceeding to enforce the order of October 14, 1947, hereinabove set forth, should be and the same is hereby granted, and said Honorable Sam Sullivan is hereby ordered and directed to refrain from proceeding further in said action.

The writ of prohibition as to the Honorable W. A. Lackey, for the reasons herein stated, is denied.

BAREFOOT, P. J., and JONES, J., concur.