Robert HENDRICKS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12195.

Criminal Court of Appeals of Oklahoma.

May 9, 1956.

James H. Mathers, Tupelo, Sid White, Oklahoma City, for plaintiff in error, petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., L. O. Thomas, County Atty. Craig County, Vinita, for defendant in error, respondent.

POWELL, Judge.

This is an original petition in this court for a writ of error coram nobis.[1]

The petitioner was charged and convicted of murder, and upon appeal to this court the judgment was affirmed. Hendricks v. State, Okl.Cr., 296 P.2d 205.

[1]. The formal title: "Quae Coram Nobis Resident", means, "Let the record remain before us."

"The framework of the common law Coram Nobis whereby the original trial court reexamines judgments of conviction rendered by it because of alleged violations outside the record has been adopted by the United States Congress for the federal judiciary in Title 28 of the United States Code (§ 2255), and by the legislatures of the States of Illinois, North Carolina, Indiana and Wisconsin. With the exception of the State of Wisconsin, the statutes of these states bear titles other than Coram Nobis, but all include the substantive and procedural aspects of contemporary common law Coram Nobis with individual modifications." Coram Nobis, Common Law, Federal, Statutory, with Forms, by Dr. Eli Frank (1953), Newkirk Associates Inc., Albany, N. Y.

██ Jurisdiction to grant writs of error coram nobis, if meritorious cause stated, lies in the court that rendered the judgment. 31 Am.Jur. (Judgments) p. 322, § 800; 24 C.J.S., Criminal Law, § 1606, b(2); Holford v. Alexander, 12 Ala. 280, 46 Am.Dec. 253, 259; Strang v. U. S., 5 Cir., 53 F.2d 820; Cook v. U. S., 1 Cir., 171 F.2d 567, certiorari denied 336 U.S. 926, 69 S.Ct. 647, 93 L.Ed. 1088; Smith v. State, 245 Ala. 161, 16 So.2d 315; Ex parte Lindley, 29 Cal.2d 709, 177 P.2d 918; Stephenson v. State, 205 Ind. 141, 179 N.E. 633, and 186 N.E. 293; State ex rel. Emmert v. Gentry, 223 Ind. 535, 62 N.E.2d 860, 161 A.L.R. 532; Coram Nobis, Common Law, Federal, Statutory with Forms, Frank, p 75.

██ The application for the writ was filed in this court after its opinion on appeal, but prior to issuance of mandate and while petition for rehearing was pending. There is authority for the view that after affirmance of a judgment, permission to apply in the trial court for a writ of error coram nobis must first be obtained from the appellate court. See Taylor v. Alabama, 335 U.S. 252, 68 S.Ct. 1415, 92 L.Ed. 1935; Garrison v. U. S., 5 Cir., 154 F.2d 106; Young v. U. S., 5 Cir., 138 F.2d 838; Strang v. U. S., 5 Cir., 53 F.2d 820; Lamb v. State, 91 Fla. 396, 107 So. 535; Washington v. State, 92 Fla. 740, 110 So. 259; Lake v. State, 101 Fla. 646, 135 So. 123; Chambers v. State, 113 Fla. 786, 152 So. 437; House v. State, 130 Fla. 400, 177 So. 705; Johnson v. State, 144 Fla. 87, 197 So. 721; Horne v. Bushell, 2 Strange 950, 93 Eng.Reprint 961.

██ We are in agreement with this view, and for the purpose of this hearing by reason of the circumstances presented, shall consider the verified petition as if there was attached an application for permission to file it in the trial court for a determination of the sufficiency of the same and perhaps an eventual review by this court. But to justify our referral to the trial court the petition would have to set forth facts making out a prima facie case for the writ.[2]

On March 28, 1956 oral argument was heard in support of this court granting the writ. Petitioner was represented by Judge James H. Mathers and Sid White, Esq.; and Hon. Sam H. Lattimore, Assistant Attorney General, and L. O. Thomas, County Attorney of Craig County appeared for the State. No evidence was offered by petitioner, but the State presented affidavits controverting the allegations contained in petition, so that the presiding judge directed the State to file a response to the petition and to attach the affidavits the Attorney General then had in court, together with any additional ones desired covering the factual matters not shown by the record on appeal but argued pro and con by counsel.

We have now before us the verified petition, a response by the State, attached to which are affidavits from ten different persons controverting various allegations in the petition, together with a transcript of all minutes made at trial concerning appointment of attorneys to defend petitioner, the conduct of the trial, etc. The petitioner has filed a verified reply with two additional affidavits by himself.

This court has never caused the granting of a writ of error coram nobis, although a number of cases have received its consideration. State ex rel. Mitchell v. Swindall, 1925, 33 Okl.Cr. 210, 241 P. 456; State ex rel. Attorney General v. Hurst, 59 Okl. Cr. 220, 57 P.2d 666; State ex rel. Burford v. Sullivan, 86 Okl.Cr. 364, 193 P.2d 594; Gibson v. State, 87 Okl.Cr. 260, 197 P.2d

2. See statement with authorities cited in 24 C.J.S., Criminal Law, § 1606, b(1), p. 145, to the effect that: "In the absence of a statute abolishing or superseding it the writ of error coram nobis lies to set aside a conviction obtained by duress or fraud, or where by some excusable mistake or ignorance of accused, and without negligence on his part, he has been deprived of a defense which he could have used at his trial, or where facts have been concealed at the trial which if known would have prevented a conviction. In other words, the writ will lie where accused desires to bring some new fact before the court which cannot be presented by motion for new trial, appeal, or other existing statutory proceedings." See also 46 Ann.Dec. 259; Coram Nobis by Dr. Eli Frank, Chap. 3, basis for the writ.

310; Ex parte Hinley, 94 Okl.Cr. 267, 234 P.2d 947; In re Ballard, 95 Okl.Cr. 89, 240 P.2d 455; Ex parte Tidwell, 95 Okl.Cr. 53, 239 P.2d 524.

Title 22 O.S.1951 § 9 provides:

"The procedure, practice and pleadings in the courts of record of this State, in criminal actions or in matters of criminal nature, not specifically provided for in this code, shall be in accordance with the procedure, practice and pleadings of the common law."

Title 20 O.S.1951 § 40, provides:

"The Criminal Court of Appeals shall have exclusive appellate jurisdiction, co-extensive with the limits of the State, in all criminal cases appealed from the district, superior and county courts, and such other courts of record as may be established by law."

Section 41 of the same Title provides:

"Said court and judges thereof shall have the power to issue writs of habeas corpus; and under such regulations as may be prescribed by law, issue such writs as may be necessary to exercise its jurisdiction; and may prescribe and promulgate such rules for government of said court as it may deem necessary."

See, in connection with the above, art. VII, § 2 of the Oklahoma Constitution.

■ We conclude, as stated in State ex rel. Mitchell v. Swindall, supra [33 Okl.Cr. 210, 241 P. 458], that "we see no reason why in a proper case resort to this Writ may not be had."[3] But at the same time,

we must state that we can conceive of few situations where specific statutory provisions in this State would not afford relief. As stated by this court in Ex parte Hinley, supra [94 Okl.Cr. 267, 234 P.2d 948]:

"The right given to one convicted of crime to file a motion in arrest of judgment or a motion for new trial because of newly discovered evidence, and other statutory remedies have largely superseded the office and functions of the common law writ of coram nobis."

Expressed in more detail is the oft quoted statements by Justice Elliott, in the basic case of Sanders v. State, 85 Ind. 318, 44 Am.Rep. 29, and approved by this court in State ex rel. Burford v. Sullivan, supra [86 Okl.Cr. 364, 193 P.2d 602], where it is said:

"'"It is our opinion that the courts have the power to issue writs in the nature of the writ coram nobis, but that the writ can not be so comprehensive as at common law, for remedies are given by our statute which did not exist at common law—the motion for a new trial and the right of appeal—and these very materially abridge the office and functions of the old writ. These afford an accused ample opportunity to present for review questions of fact, arising upon or prior to the trial, as well as questions of law; while at common law the writ of error allowed him to present to the appellate court only questions of law. Under our system all matters of fact reviewable by appeal, or upon motion, must be presented by

3. See 14th Amendment to Const. of U. S., as basis for writ: "* * * nor shall any State deprive any person of life, liberty, or property, without due process of law."

"When human life or liberty is at stake, the American courts will search out remedies, ancient or contemporary, to insure that the concept of due process has prevailed throughout all stages of a criminal proceeding. The importance of this underlying philosophy of our system of criminal jurisprudence becomes more conspicious today when one reflects on the status of individual rights in certain areas of the world, where totalitarianism has submerged human rights to the point of invisibility.

"Habeas Corpus has long been the bulwark for the protection of human liberties in the United States and other countries where the English common law has been the root of their judicial systems. However, because of the general limitations of its application and procedural difficulties involved, except where the scope of the Great Writ has been expanded by statute, a need arose for another remedy where the record under scrutiny was devoid of facts relating to the asserted violation of due process for which no legal remedy was available. A venerable remedy, Coram Nobis, has been revived to complement Habeas Corpus in this respect." Dr. Eli Frank. (Emphasis supplied.)

motion for a new trial, and can not be made the grounds of an application for the writ coram nobis. Within this rule must fall the defense of insanity as well as all 'other defenses existing at the time or commission of the crime. Within this rule, too, must fall all cases of accident and surprise, of verdicts against 'evidence, of newly discovered evidence, and all like matters." ' "

And see People v. Smith, 120 Cal.App.2d 531, 261 P.2d 306, and citations, in which case it is held:

"Writ of error coram nobis is not a catch-all by which those convicted may litigate and re-litigate propriety of conviction ad infinitum, but serves limited and useful purpose of correcting errors of fact which cannot be corrected in any other manner."

■ The only relief which can be granted under petition for writ of error coram nobis is the setting aside of judgment and the granting of a new trial. State ex rel. Attorney General v. Hurst, supra; Stephenson v. State, Ind., supra.

■ A writ of error coram nobis will not be granted except where it clearly appears that the petitioner had a valid defense in the facts of the case. State ex rel. Burford v. Sullivan, supra; Sanders v. State, Ind., supra; United States v. Moore, 7 Cir., 166 F.2d 102, certiorari denied 1948, 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772; United States v. Norstrand Corp., 2 Cir., 1948, 168 F.2d 481, 482; United States v. Paglia, 2 Cir., 1951, 190 F.2d 445; Ziebart v. United States, 5 Cir., 1951, 192 F.2d 804; Bowen v. United States, 5 Cir., 1951, 192 F.2d 515; Farnsworth v. United States, 1952, 91 U.S.App.D.C. 121, 198 F.2d 600, 601.

■ It has further been held, and in which this court concurs, that evidence by which facts alleged in writ of error coram nobis can be proven must be set out in petition. Vickery v. State, 1952, 230 Ind. 662, 106 N.E.2d 223; Stephenson v. State, supra,

1933, 205 Ind. 141, 179 N.E. 633, 186 N.E. 293. One of the rules laid down by. the Seventh Circuit Court of Appeals in affirming an order denying the petition was that in order to vacate a judgment of conviction, the defendant must not only aver that he is not guilty but he must also set forth the fact that he has a good and meritorious defense and the facts constituting the same in such detail that the court can weigh the substance of it.[4]

This brings us to a consideration of the petition for the writ.

The petition in substance alleged that plaintiff in error was held in jail without benefit of counsel for 96 hours; that he was subjected to tortuous grilling, accompanied by threats; and that finally, being unable to stand such treatment any longer, he wrote and signed a "paper writing" all at the dictation of the county attorney of Craig County; that said statement was forced from plaintiff in error under threat of further mistreatment and threats to arrest one Marie Brown and subject her to the same treatment; that the State's evidence developed that he had gone to the premises of one Mrs. Hess on August 14, 1954 with a man she saw but did not know, claimed by other State's witnesses to have been Ream Payton [the man who was murdered]; that in truth and fact the man was Jim Ray [now deceased] and that defendant so advised his attorneys, Paul O. Simms and William W. Bailey, and although Jim Ray was available at that time that petitioner's attorneys refused to call him as a witness; that there were witnesses that could have accounted for every moment of petitioner's time; that petitioner furnished his attorneys with a list of 32 witnesses and requested that they be subpœnaed, but his attorneys failed and refused to subpœna them; that petitioner requested and begged his attorneys to permit him to testify and to explain the facts under which the alleged confession was made but that they refused to permit him to testify; that prior to trial petitioner prepared and delivered to his at-

---

4. United States v. Moore, 166 F.2d 102, certiorari denied 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772.

torney Paul O. Simms, an affidavit to disqualify the trial judge and an affidavit to obtain a change of venue, but that his attorneys failed to file said affidavits and refused to use them; that the trial court appointed trial counsel without consulting petitioner and that he was in fact without representation by the court-appointed attorneys; that petitioner's "measure of prosperity" following Ream Payton's death, referred to by this court in its opinion could have been explained by petitioner's attorneys, by showing at trial that he had recently sold a quarter horse to Payton and had been paid by him the sum of $250.

The State in its response has denied generally and specifically each and every allegation contained in the petition supporting the response with a transcript of the court reporter's minutes covering the appointment of the attorneys to represent the petitioner and of the trial proceedings. Also affidavits from: Fred Rucker, employee of the Vinita Stockyards and Auction Association; Lee Douthitt, deputy sheriff and jailer of Craig County; J. M. Ince, sheriff of Craig County; R. A. Wilkerson, special prosecuting officer; Vernon Glenn, Chief of Police of Vinita; Elizabeth Lindley, bookkeeper and clerk at the Vinita Stockyards and Auction Association; W. E. (Bill) McDonald, a prisoner in the Craig County jail at the time petitioner was incarcerated there; John Q. Adams, assistant county attorney, Craig County; Marie Brown, and Mary Monroe Simms, widow of Paul O. Simms, attorney.

Petitioner has filed a reply in which he alleges that he never knew when the trial judge appointed William W. Bailey to assist in his defense; that Bailey appeared at the jail with Paul O. Simms about January 17, 1955 and the three discussed the case and that the trial began January 24, 1955. Attached is an affidavit from Hendricks disputing most of the answers of Bailey to the interrogatories propounded by this court, and a second affidavit censoring his attorneys for not attempting to show the reasons why State's witness at trial, Frank Ross, was suspended as a

highway patrolman and subsequently as chief of police of Vinita. He claimed that the trial judge had purchased cattle from the Vinita Stockyards and Auction Association that the deceased Payton in fact had an interest in, and claiming that by reason thereof the trial judge should have been disqualified but that his attorneys failed to make an effort to disqualify him. Petitioner also claims in this affidavit that he could have proven by Dr. Lane and druggist Feagin that a few days before the murder that one of his fingers was injured and bled profusely in his room.

Petitioner in the affidavit also sets out a list of additional witnesses, other than those who testified at trial, whom he claims his attorneys failed to subpoena though he requested them so to do.

We have carefully read the various instruments and affidavits that have been filed under the proceedings here for a writ of error coram nobis, and have reviewed the trial record where the same would shed light on the matters complained of in the petition for the writ to determine if, under the circumstances peculiar to this case, we should grant permission for the filing of the petition in the trial court.

There is one outstanding defect in the petition, and being that nowhere in the petition, the reply or the two affidavits furnished, does Robert Hendricks categorically deny that he actually murdered Ream Payton, nor does he outline a defense other than an allegation that if his counsel had subpoenaed more witnesses that he could have accounted for all his time on the Saturday that Ream Payton was murdered. An alibi was the defense interposed and at trial witnesses were offered by him in an effort to show that he could not have been at a place where he could have murdered Payton. The State's evidence showed otherwise, as may be revealed from the facts considered by the jury and outlined in Hendricks v. State, supra.

But, irrespective of this, petitioner does attempt to plead extrinsic fraud on the part of his attorneys—in effect, as indicated by the summary of his petition heretofore set out, that his attorneys at all

times knew of the complaints now made, but failed and refused to do anything about such vital matters, the first of which allegations would have constituted a clear violation of the Fourteenth Amendment to the Constitution of the United States, if true.

Under such circumstances, the allegations being of so serious a nature, we have been inclined, irrespective of the defects in question, to re-explore the record as well as the papers filed in the within proceeding to determine whether or not the allegations in the petition were reasonable and whether they bear the ear marks of truth, all to make certain as to whether or not petitioner is about to be deprived of life or liberty without due process of law. Hysler v. Florida, 315 U.S. 411, 316 U.S. 642, 62 S.Ct. 688, 86 L.Ed. 932; Taylor v. State, 249 Ala. 130, 30 So.2d 256; Ex parte Taylor (Taylor v. State), 249 Ala. 667, 32 So.2d 659; Taylor v. State of Alabama, 335 U.S. 252, 68 S.Ct. 1415, 92 L.Ed. 1935.

The record made at the trial discloses that Paul O. Simms, Attorney, represented the defendant at his preliminary hearing before justice of the peace Geo. W. Zumwalt, Vinita, held on September 1, 1954; thereafter and on September 10, 1954 Robert Hendricks appeared in the district court of Craig County for arraignment and was there again represented by Paul O. Simms. Defendant personally waived time to plead and his attorney entered a plea of "not guilty" for the accused. Mr. Simms opposed unsuccessfully the efforts of the county attorney to transfer the defendant to the State Penitentiary at McAlester for safe keeping. The court ordered that Hendricks be returned to Craig County in ample time to prepare for his trial, and he was later and on December 22, 1954 ordered returned for trial, which was to take place on January 24, 1955, and had approximately thirty days for consultation with counsel.

After arraignment the trial court inquired of Robert Hendricks whether or not he had made arrangements for counsel from that point on and the defendant replied that he had not. The record before us shows the following:

"By Mr. Simms: He [defendant] asks that the court appoint counsel at this time.

"By the Court: Well—

"Mr. Simms:—not able to hire counsel he [defendant] says.

"By the Court: All right, in that case then, the court will appoint Mr. Paul O. Simms to represent the defendant in this matter."

The defendant was present and offered no objection to his then counsel being appointed at the State's expense to continue on in the trial. Mr. Simms was a former Assistant United States District Attorney for the Northern District of Oklahoma, and a former county attorney of Craig County, and had long been a member of the Oklahoma Bar, and in active practice.

The minutes of the court clerk further show that on December 10, 1954 the court further appointed William W. Bailey to assist Mr. Paul O. Simms in the case. Mr. Bailey has appeared before this court and conducts himself well. He was a younger man than Mr. Simms, who died pending appeal of the case to this court.

The record shows that the trial commenced on January 24, 1955, and that defendant was present with his said two attorneys representing him. On February 3, 1955 there came on for hearing defendant's motion for new trial and he was present with his attorneys. The court overruled the motion, allowed each of his attorneys a $100 fee, and ordered an appeal record to be made at the expense of the State.

"By the court: All right, motion for new trial having been overruled, it now becomes the duty of this court under verdict of the jury in this case to impose the sentence as rendered by the jury and as provided by the laws of this State. But, before the court passes judgment and sentence in this case is there anything further now before the court passes judgment and sentence?

"Mr. Wilkerson: Nothing for the State, Your Honor.

"Reporter's note: (Counsel for defendant consult with defendant. Defendant moves head back and forth, from left to right, signifying 'No')

"Mr. Simms: Nothing.

"By the Court: Is there anything the defendant wishes to say at this time?

"Reporter's note: Defendant moves head back and forth, from left to right, signifying 'No')

"Mr. Simms: No."

We conclude that the record shows that Mr. Paul O. Simms was an attorney selected by the defendant, and that Mr. William W. Bailey was appointed by the court to assist Mr. Simms and that though he had opportunity, the defendant never at any time objected to either Bailey or Simms representing him. The record shows that these attorneys diligently performed their duties. As mentioned in the opinion, they permitted certain hearsay evidence to be admitted without objection, but the matters were otherwise proven by competent testimony, and their failure to object in every instance might have been sound tactics to avoid being prejudiced in the eyes of the jury. This is debatable. If it was a mistake, we are convinced that it was a mistake in judgment. The trial record disclosed nothing in the conduct of trial counsel to indicate fraud.

William W. Bailey, in answer to interrogatories submitted, states that he first consulted Robert Hendricks in the county jail at Vinita on December 29, 1954; that he and Simms were permitted to freely consult with their client; that he never learned of any threats made against their client by officers or officials or of tortuous grilling. He denies that defendant Hendricks insisted that the trial judge be disqualified. Affiant states: "It was suggested at one point during the trial by counsel for Robert Hendricks that he testify in his own behalf, and to such suggestion he refused." It was further stated: "The witnesses that the defendant suggested we have as his witnesses were as follows: J.

M. Ince, Tom Burkhalter, Vincent Elliott, Tom Hawkins, Bennie Long and Lena Wilson, all of whom testified on behalf of the defendant. The three other witnesses whom the defendant wanted subpoenaed were witnesses for the State, being: Miss Hess, Miss Brown, and Tom Carroll, and they were in court as witnesses."

We considered the circumstances surrounding the written confession made by Robert Hendricks in Hendricks v. State, supra, and the evidence showed that the confession in question was found on a bunk in Hendricks' cell and the only persons in jail at the time were a white trusty in for drunkenness, and a Negro prisoner in an adjoining cell.

L. O. Thomas, county attorney, testified concerning an interview that he and John Q. Adams, assistant county attorney, had with Hendricks in the jail on Monday, August 30, 1954. Hendricks had objected to Mrs. Marie Brown being brought into the case, and he said, "She had nothing to do with it", and "Why don't you leave the innocent alone", and further said, "Well, now I sent out several messages by Paul Simms, and if I don't get the right answers back in the morning I am going to let the dogs loose." All this was before the jury.

Here John Q. Adams, assistant county attorney, has attached an affidavit to the State's response in which he says that Hendricks requested the conference in question and that he went with county attorney Thomas to the jail and was present during the conference; that Hendricks was advised that anything he might say might be used against him, and that he had a right to have Mr. Paul O. Simms, his attorney present; that the conference lasted not more than thirty or forty minutes and was pleasant and friendly at all times.

There is attached an affidavit to the State's response from Lee Douthitt, county night jailer, in which he states that at no time was Hendricks subjected to tortuous grilling; that on the evening of August 29, 1954 Mr. Paul O. Simms, defendant's attorney, delivered to him at the ground door a bundle of clothing with the request

that he carry them up the three flights of stairs and give them to Hendricks, which he did, after examining them; and when he delivered the clothing Hendricks seemed to be in good spirits, but the next morning was found in his cell with self-inflicted wounds.

There were affidavits attached to the State's response denying the various allegations in the petition. It would appear that Payton accepted the quarter horse from Hendricks on a debt and gave him $50 difference, though that is not a material matter.

Although William W. Bailey swears that counsel suggested to Hendricks that he testify, we can well understand why he might have been justified in not testifying. For although it was before the court through defendant's conversations with witnesses that he had previously been convicted of murder, the circumstances of how his victim had met his death was not before the jury, and if he had testified he could have been questioned concerning the facts of the murder and any other convictions. The Attorney General in his response has attached the F. B. I. record of the defendant, and the information therein contained, where admissible, could have been most damaging.

In passing on petition for writ of error coram nobis, court acts in exercise of a wise discretion and looks to the reasonableness of allegations of petition and to existence of probability of truth thereof and grants leave only when it appears that proposed attack on judgment is meritorious.

On petition for writ of error coram nobis, Criminal Court of Appeals will take full notice of record of proceedings wherein petitioner was convicted.

The writ of error coram nobis was not designed to enable the guilty to escape punishment and should be granted only when it is made clearly to appear that petitioner has a valid defense. Ex parte Taylor, 249 Ala. 667, 32 So.2d 659; Taylor v. State, 335 U.S. 252, 280, 68 S.Ct. 1415, 92 L.Ed. 1935.

We conclude that the allegations of the petition are unreasonable and that there is no probability of truth contained therein, and that the proposed attack upon the judgment is not meritorious; that the petition is further defective in that nowhere does the petitioner deny that he actually committed the murder for which he was convicted.

We therefore conclude that the petitioner has not made out a case which calls upon this court to grant leave to file petition for writ of error coram nobis and it will accordingly be here denied.

Application to file petition for writ of error coram nobis in trial court denied.

JONES, P. J., and BRETT, J., concur.