**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael William HAGA,**
**Defendant–Appellant.**

**No. 90–1202.**

United States Court of Appeals,
Tenth Circuit.

April 25, 1991.

James P. Moran, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., with him on the brief), Denver, Colo., for plaintiff-appellee.

Todd J. Thompson (Walter L. Gerash with him on the brief), of Gerash, Robinson & Miranda, P.C., Denver, Colo., for defendant-appellant.

Before MOORE, SETH, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Mr. Haga appeals the denial of his motion for a writ of coram nobis whereby he attempted to set aside a nine-year-old guilty plea on the grounds he was incompetent to enter the plea and also was insane at the time the offense was committed.

The facts underlying Mr. Haga's guilty plea are undisputed. Mr. Haga, a law school graduate, was employed as a commercial loan officer at a bank. Mr. Haga prepared three fictitious loan transactions and pocketed approximately $500,000 which he used to cover his stock market losses. These acts occurred in 1979 and 1980. During the pendency of his case on embezzlement charges, Mr. Haga was successfully employed as a law clerk for his defense counsel's firm. Mr. Haga entered into a plea agreement whereby he would plead guilty to one count of embezzlement (18 U.S.C. § 656) and the government would file no additional charges. The district court accepted this guilty plea in 1981 and sentenced Mr. Haga to five years' imprisonment.[1] The sentencing judge also recommended psychiatric evaluation. Mr. Haga was released from confinement two years later in 1983 and was discharged from parole after three more years in 1986.

In July 1987, Mr. Haga was charged with the crime of burglary in a state court of Colorado. In April 1988, Mr. Haga was examined by a psychiatrist and diagnosed with a rare medical malady that has psychological manifestations. Thereafter, in 1988 and 1989, he was examined by other doctors who agreed that his medical condition might cause intermittent periods of "abnormal psychiatric functioning." Consequently, an insanity plea was entered in the state court proceedings.[2] In 1989, fearing the collateral consequences of his earlier guilty plea, Mr. Haga commenced this action in the nature of coram nobis to vacate his embezzlement conviction on the grounds of his alleged incompetency to enter the plea of guilty and alleged insanity at the time of the commission of the offense.

Mr. Haga filed his petition alleging in some detail his medical condition and attaching thereto at least four doctors' reports. Mr. Haga requested a hearing to determine his sanity and competency at the time of the offense and at the entry of his plea. Following various motions by Mr. Haga and responses by the government,

---

1. Mr. Haga pleaded guilty and was sentenced in the United States District Court for the District of Colorado. Mr. Haga correctly filed this action in the same court.

2. Trial was scheduled to commence in the state court proceeding in April 1990. Mr. Haga entered a guilty plea and received probation on April 9, 1990.

the district court denied Mr. Haga relief. The district court, accepting Mr. Haga's factual allegations and the attached doctors' reports, found the "evidence does not indicate clearly that [Mr. Haga] suffered from the disease from 1979 to 1981. Nor does it indicate the severity of the illness or the relationship between petitioner's illness and his clarity of thought." The court also held the evidence "creates no real and substantial doubt as to his competence at the time." The district court concluded the evidence falls short of establishing a complete miscarriage of justice in the 1981 proceeding.

Mr. Haga filed a motion to reconsider and urged the case be assigned to the original sentencing judge.[3] Mr. Haga also attached to this motion another physician's affidavit opining Mr. Haga was suffering from his malady in 1979–1981 and further opining Mr. Haga was incompetent and insane during 1979–1981.

The district court thereupon set the matter for a fifteen-minute hearing. At this hearing, Mr. Haga introduced a large quantity of medical evidence through various documents and elicited the testimony of Dr. Frey for five minutes, which was the amount of time requested by Mr. Haga's counsel. The thrust of this evidence was Mr. Haga was both incompetent and insane at the relevant times. The district court then called for briefing and gave Mr. Haga additional time to submit any further medical authority he wished. The court subsequently granted Mr. Haga's request to further extend the time for submission of materials.

Following these submissions, the district court entered its eighteen-page Memorandum Opinion and Order. In this order, the district court discussed and analyzed the evidence submitted by Mr. Haga and concluded the medical conclusions therein, i.e., insanity and incompetency, were "at best speculative." 740 F.Supp. 1493. The district court was also troubled by the lack of medical evidence utilized by the testifying physician in reaching his conclusions. Fi-

nally, the district court held there had been no attempt to show why due diligence would not have revealed evidence of Mr. Haga's malady sooner. Relief was denied.

Mr. Haga appeals asserting but two issues: (1) whether the district court erred in summarily denying relief without an evidentiary hearing; and (2) whether the district court erred in refusing to assign the proceedings to the original judge who accepted the plea and imposed sentence.

## I

### The Hearing

█ Mr. Haga asserts the district court denied his motion for coram nobis without a hearing. Mr. Haga contends the abbreviated hearing following the motion to reconsider was not an evidentiary hearing on the merits but was "on the Motion to Reconsider," an argument that is not persuasive. Mr. Haga's "Motion to Reconsider and Vacate Order re Coram Nobis" dated January 5, 1990, specifically did *not* request a hearing to discuss whether an evidentiary hearing should be held. Rather, Mr. Haga requested the district court to "order that an evidentiary hearing be conducted to resolve the issues of incompetency and insanity." The district court granted that request in its Order of February 5, 1990. The court concluded that the hearing of February 9 *was* an evidentiary hearing. The court stated: "We granted the motion for a hearing on the issue of competency. The hearing was held earlier this year." We agree.

The record reveals Mr. Haga was afforded an evidentiary hearing on the merits of his motion for coram nobis. It is true this hearing was held after the motion to reconsider was filed. It is likewise true the hearing and all the evidence, both documentary and testimonial, went solely to the merits, i.e., whether Mr. Haga was insane at the time of the commission of the offense or incompetent at the time he entered his guilty plea. The fact the district court did not hold an evidentiary hearing following the filing of his initial pleading is not

---

**3.** Mr. Haga did not file his motion for assignment to the sentencing judge until December 13, 1989. When he later filed his Motion to Reconsider, he again raised the issue of reassignment.

significant to our analysis as an evidentiary hearing was subsequently afforded Mr. Haga. The district court's order squarely addresses the merits, as did the evidence. Our review of the record persuades us Judge Finesilver was able to determine, on the basis of unopposed offers of proof and the substantial documentary evidence presented by Mr. Haga, that Mr. Haga could not prevail on the merits of his *coram nobis* claim.

The writ of *coram nobis* "is available only to 'correct errors that result in a complete miscarriage of justice.'" *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (quoting *United States v. Williamson*, 806 F.2d 216, 222 (10th Cir.1986)). We find no such error in the record before us.

It is important to note Mr. Haga does not complain of being deprived of the opportunity to offer and have received the evidence he desired because of the shortened length of the hearing.

## II

### Failure to Assign to Original Judge

On November 7, 1989, Mr. Haga filed his Motion in the Nature of Coram Nobis. On this same date the case was assigned by draw to Judge Finesilver. On November 8, Judge Finesilver ordered the government to respond. On November 21, Judge Finesilver granted the government an extension. It should have been clear that Judge Finesilver was assuming control of this case, yet Mr. Haga failed to request reassignment until well thereafter.

■ Mr. Haga contends we measure the decision not to assign the case by the "Availability of Sentencing Judge" standard of review. The government contends we measure this decision by an abuse of discretion standard. We agree with the government.

Mr. Haga cites several cases he maintains require a coram nobis proceeding to be decided by the sentencing judge. *See United States v. Morgan*, 346 U.S. 502, 507 n. 9, 74 S.Ct. 247, 250 n. 9, 98 L.Ed. 248 (1954); *Carter v. Attorney General of the United States*, 782 F.2d 138, 141 (10th Cir.

1986); *Gano v. United States*, 705 F.2d 1136, 1137 (9th Cir.1983); *United States v. Arnett*, 628 F.2d 1162, 1165–66 (9th Cir. 1979); *Farrow v. United States*, 580 F.2d 1339, 1348–51 (9th Cir.1978); *Hendricks v. State*, 297 P.2d 576, 579–81 (Okla.Crim. App.1956); *Ex parte Lindley*, 29 Cal.2d 709, 177 P.2d 918, 928–29 (1947); *People v. Welch*, 61 Cal.2d 786, 40 Cal.Rptr. 238, 241, 244, 394 P.2d 926, 929, 932 (1964); *see also* 24 C.J.S. *Criminal Law* § 1614 (1990).

These cases do not require the sentencing judge to decide a coram nobis motion, but most express a preference for the sentencing judge to make the determination. The reason underlying this preference is the sentencing judge is familiar with the case. *Farrow*, 580 F.2d at 1350. That rationale is not applicable to this case. The sentencing judge heard the case in 1981. It would be speculation to now hold the sentencing judge would remember the details nine years later.

As the district court found and Mr. Haga does not dispute, the sentencing judge took medical retirement in 1988 and, since returning to the bench in senior status in July 1989, has handled a limited case load that does not include criminal matters. Mr. Haga does contend that when Judge Kane was informed of the case, he "expressed no disinclination to preside." Mr. Haga contends Judge Kane would have observed Mr. Haga's demeanor during sentencing. As previously noted, it would be speculation on our part to hold Judge Kane would remember Mr. Haga's demeanor nine years earlier.

■ The parties have cited no cases defining the applicable standard of review. The law states a preference that coram nobis proceedings be determined by the sentencing judge. As this requirement is not absolute, we must measure the decision by the abuse of discretion standard. In view of the fact the merits of this case must necessarily be decided on the court record and subsequent medical evidence rather than Mr. Haga's demeanor in 1981, and due to the sentencing judge's change of status, we cannot hold the district judge abused his discretion in failing to assign

the case to the sentencing judge. This is particularly so as the law expresses no requirement for the sentencing judge but rather a mere preference to determine the coram nobis proceeding. Under the facts of this case, we have not been persuaded Judge Finesilver abused his discretion.

The judgment of the district court is AFFIRMED.