2000 OK CR 21

**STATE of Oklahoma, ex rel., Robert H. MACY, District Attorney, Petitioner,**

v.

**Honorable Susan BRAGG, District Judge, Respondent.**

**No. PR–2000–1122.**

Court of Criminal Appeals of Oklahoma.

Oct. 27, 2000.

---

### *ORDER*

¶ 1 On August 30, 2000, Petitioner filed an Application to Assume Original Jurisdiction and a Petition for Writ of Prohibition and/or Writ of Mandamus, requesting an Order from this Court reversing Respondent's order striking the jury panel which had been summoned in Oklahoma County District Court Case No. CF–98–7353. Petitioner asserted Respondent lacked authority to strike the jury panel based on its racial make-up. On August 31, 2000, this Court directed a Response from Respondent, or a designated representative. The Response was filed on September 6, 2000, and oral argument on this matter was heard September 7, 2000. At the conclusion of that hearing, this Court, by a vote of four (4) to one (1) found merit with Petitioner's Application. We now render the following opinion.

### *Background*

¶ 2 On August 28, 2000, Respondent met with both parties privately in her chambers, while a prospective jury panel was assembled in her courtroom. At that time, defense counsel interposed an objection to the panel, stating "I looked out over the courtroom and in the jury box and there is one black prospective juror in the entire courthouse or in the courtroom." (Tr. 4). Counsel argued such lack of potential black jurors in the panel did not fairly represent the defendant's peers and moved the court to strike the panel and declare a mistrial.[1]

¶ 3 After hearing the State's objection, the court sustained the motion and struck the jury panel. In so ruling, the court stated,

> The jury panel is going to be stricken. *Batson,* you know, you are supposed to show a—a pattern.[2] In this particular case, the fact that there is no—she is entitled to at least, have the opportunity. And if this is—I'm amazed that this is the

---

1. The State had indicated it would challenge the one Black juror due to that juror's previous contacts with law enforcement.

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

only African American person in the panel, in the whole jury pool.

I did the Excuse Docket Friday and it never entered my mind that there were no other African Americans because, I mean, we had Asians and Latinos, but no. No. The law is, is that she must—not even on a *Batson* challenge, but she must have the opportunity to have jurors of her peers because it's fundamentally unfair, otherwise. And if, in fact, he is the only African-American in the whole pool and then because of some possible criminal contacts is to be challenged, I find that fundamentally unfair.

I'm going to strike that panel. And it wouldn't matter what kind of case it is. That's just—I mean, I have ruled against a *Batson* challenge before, but I've actually never had someone—I can't recall whether I've had a case where there were no minorities available as prospective jurors. I may have, but it doesn't come to mind if in fact—because I've had one. There were none in the prospective jurors that came over.

¶ 4 The following morning, the parties appeared again in chambers where the following record was made,

Yesterday there was a Motion to Strike the Jury Panel, which was sustained, on behalf of the Defendant on the basis that the panel that came over had one African—the Defendant is an African-American female. There was one African-American, who is a male, in the jury panel that came over, and the information was that the State was probably going to challenge that person. But be that as it may, and that was the only African-American that was in the pool.

So, I struck the jury panel because the court felt that it was fundamentally unfair and since there was not a sufficient number of availability of African-American within the total panel from which to have a jury of her peers. But, anyway, and so what we decided was that I would call this jury, prospective jury panel back and request 35 more jurors and just exchange them from the jury assembly room. However, when I arrived today the State advised that they wish to argue Reconsideration of the Motion to Strike the Jury panel.

Thereafter, the State objected arguing no evidence had been offered to the court establishing the process of selecting prospective jurors in Oklahoma County was discriminatory. The following colloquy transpired,

[The court]: Well, you know, I didn't base my ruling on *Batson*. I know what *Batson* says.

[The prosecutor]: I understand, Judge, that you basically said that the selection process yesterday was fundamentally unfair.

[The court]: Yes, that's correct.

[The prosecutor]: And there's been no court require that we do anything different than what we did, that the way that it's been done this week. And the State could find nothing that said that it was fundamentally unfair.

[The court]: Nor could I. I didn't base it on *Batson*, and I could be wrong as rain but I'm not changing my ruling. And the reason why is, is that I have experienced a jury panel with a minority defendant, person charged, and the outcome has been based upon race of the defendant. On the jury panel there were no African-Americans. There was, I think I said yesterday, one Latino and two Indians. Neither one of them ever made it. And I felt that it was fundamentally unfair at the time of trial and I do as we sit here, and even though *Batson* says what it says, though I didn't base my ruling on *Batson*, and I as I said, Mr. Dills, I can be just as wrong as rain. I am not changing my ruling. I am striking that jury panel.

### Analysis

¶ 5 Arguments regarding the demographic composition of jury pools are not new, nor is the rule of law. In *Taylor v. State of Louisiana*, 419 U.S. 522, 526–531, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the Supreme Court considered whether systematic exclusion of women during the jury-selection process, resulting in jury pools not reasonably representative of the community, denied a criminal defendant the right to a petit jury selected

from a fair cross section of the community. In *Taylor*, the discrepancy between females eligible for jury service and those actually included in the venire resulted from the operation of Louisiana constitutional and statutory provisions which excluded women from jury service selection unless a woman had previously filed a written declaration of her desire to be subject to jury service.

¶ 6 In reversing the decision of the Louisiana Supreme Court, the Supreme Court held that a jury selection system which operates to exclude from jury service an identifiable class of citizens of eligible jurors in the community violates the Sixth and Fourteenth Amendments. 419 U.S. at 527, 95 S.Ct. 692. The Court observed the American concept of a jury trial contemplates a jury drawn from a fair cross section of the community.[3] *Id.*

¶ 7 Further, the Court found its duty to protect the constitutional rights of all did not mean it should impose on the States its conception of the proper source of jury lists, so long as the source used reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty.[4] In that regard, the Court did not impose any requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Rather, the Court noted defendants are not entitled to a jury of any particular composition; but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof. *Id.* at 538, 95 S.Ct. 692.

■■ ¶ 8 In the case at bar, there was no evidence presented to the trial court that the current method of jury selection in Oklahoma County systematically excludes distinctive groups within the community. In striking the jury panel, the trial court believed the defendant was not being given an opportunity to have a jury of her peers. However, there is no constitutional right to a jury of one's so-called peers. As stated by the Supreme Court, defendants are not entitled to a jury of any particular composition, nor is there any requirement juries reflect the various distinctive groups in the population. Lacking any evidence of systematic exclusion of distinctive groups in the community, there was no legal justification for the trial court to strike this particular jury panel.

¶ 9 Later, in *Duren v. State of Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the issue before the Supreme Court was a Missouri law granting women an automatic exemption from jury service at their request. Duren was convicted by an all-male jury which was selected from a 53 person panel on which there were five women. The Supreme Court reversed, finding the statute's exemption of women from jury service on request violated a defendant's Sixth and Fourteenth Amendment rights because it failed to ensure jurors in criminal cases were drawn from a fair cross section of the community.

¶ 10 In so holding, the Supreme Court provided the elements a defendant must prove in order to establish a prima facie violation of the fair cross section requirement. Those elements are:

1. the group alleged to be excluded is a distinctive group in the community;

2. the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

3. this under-representation is due to systematic exclusion of the group in the jury selection process.

439 U.S. at 364, 99 S.Ct. 664. The Court found Duren had met his burden of proof by establishing with statistical evidence the system by which juries had been selected violat-

---

**3.** Interestingly, the Court observed the purpose of a jury is to guard against the exercise of arbitrary power—to make available the common-sense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps over-conditioned or biased response of a judge.

**4.** The Court found the States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said the jury lists or panels are representative of the community.

ed his constitutional right to a jury drawn from a fair cross section of the community.[5]

¶ 11 Again, in the case at bar no such evidence of systematic exclusion was presented to the trial court. Indeed, the record is void of any evidence the jury panel assembled in Respondent's courtroom on the morning of August 28, 2000, was not drawn from a fair cross section of the community. While it may be true only one black person was in the defendant's prospective jury pool, without any evidence of a discriminatory juror selection mechanism, the result can only be attributed to chance.

 ¶ 12 For a writ of prohibition to issue, a petitioner has the burden of establishing (1) a court, officer or person has or is about to exercise judicial or quasi-judicial power; (2) the exercise of said power is unauthorized by law; and (3) the exercise of said power will result in injury for which there is no other adequate remedy. Rule 10.6(A), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (1999). As this Court previously ruled, we find Petitioner has met its burden.

¶ 13 **IT IS SO ORDERED.**

¶ 14 **WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this 27th day of October, 2000.

/s/ *Reta M. Strubhar*
RETA M. STRUBHAR, Presiding Judge Specially Concurring (with writing)
/s/ *Gary L. Lumpkin*
GARY L. LUMPKIN, Vice Presiding Judge Specially Concurs by joining in Judge Lile's Separate Vote
/s/ *Charles A. Johnson*
CHARLES A. JOHNSON, Judge
/s/ *Charles S. Chapel*
CHARLES S. CHAPEL, Judge, Dissenting (with writing attached)
/s/ *Steve Lile*
STEVE LILE, Judge, Specially Concurring (Writing attached)

STRUBHAR, Presiding Judge: Specially Concurring:

¶ 1 I agree with the holding of the majority that in the present case, there was no evi-

dence showing the systematic exclusion of a distinctive group within the community. Indeed, this Court's ruling in this case is well supported by the law and the evidence. Accordingly, I concur in this Court's ruling.

¶ 2 However, I write specially to add that while the Respondent Judge exceeded her authority by quashing the jury panel after only having looked at their faces, there may be instances where, after appropriate inquiry, a judge could determine that a particular jury panel is inappropriate although the original selection process was proper. Under such anomalous circumstances, where proper inquiry has been made, I would give great deference to the trial judge, who, in the proper exercise of his or her discretion, decided to quash a jury panel as inappropriate.

¶ 3 As was noted in the opinion, there was a time in history when women were systematically excluded from the jury selection process thereby forcing a woman defendant to be tried by an all male jury panel. While systematic exclusion based upon gender was clearly held unconstitutional under *Taylor,* it stands to reason that even absent systematic exclusion of women from the jury, a woman defendant facing an all male jury today could harbor rational concerns about her ability to receive a fair trial from such a jury. Indeed, I would find that this, or an analogous situation like that in the present case, could give rise to a presumption that the jury panel is inappropriate. However, the presumption that a jury trial should be quashed can be overcome if the trial court follows the proper procedure and questions the jurors to alleviate its concerns. As no such procedure was followed in the present case, I agree that the Respondent Judge abused her discretion in quashing the jury panel based on their appearance alone.

CHAPEL, Judge, Dissenting:

¶ 1 I dissent for several reasons. First, the Court purports to issue a Writ of Prohibition. What is it the Court is prohibiting? It cannot prohibit Judge Bragg from doing

---

**5.** Duren established that while 54% of the adults in the forum county were women, only 26.7% of those summoned from the jury wheel were wom-

en, and only 14.5% of the persons on the weekly venires during the period in which his jury was chosen were women.

what she has already done. The Court does not even purport to address the relief requested by the State—that is, to order Judge Bragg to get the original jury members back and proceed with the case. That would be virtually impossible. Thus, the issue presented to the Court is, quite simply, moot. The application before us meets neither the prerequisites for Prohibition nor Mandamus. Today's Order is nothing more than a very ill advised advisory opinion.

¶ 2 Secondly, this "appeal" is not properly before us. For whatever reasons, the Oklahoma legislature has limited the State's right to appeal as follows:

> Appeals to the Court of Criminal Appeals may be taken by the state or a municipality in the following cases *and no other:*
>
> 1. Upon judgment for the defendant on quashing or setting aside an indictment or information;
>
> 2. Upon an order of the court arresting the judgment;
>
> 3. Upon a question reserved by the state or a municipality; and
>
> 4. Upon judgment for the defendant on a motion to quash for insufficient evidence in a felony matter. 22 O.S.1991, § 1053 (emphasis added).

What part of "and no other" is so hard to understand. This appeal does not qualify under any of the four specified grounds for a permissible state appeal and should, therefore, be summarily dismissed.

¶ 3 Finally, even if all of these procedural problems are overlooked, the Order is incorrect in its application of the law to the substantive issues presented. In its zeal to jump into and rather shallowly analyze complex constitutional issues on an inadequate factual record, the Court misses the point. It cannot be disputed that trial judges have the authority to dismiss a jury panel if it is tainted for any reason. Judge Bragg was well within her authority in dismissing this panel. And, since she was authorized to do what she did, her decision can only be reviewed, assuming this appeal was properly perfected, for abuse of discretion. Under this standard of review and on the facts before us, I would find it very hard to say Judge Bragg abused her discretion.

¶ 4 This is only one of numerous back door appeals this Court has allowed the State to pursue recently in violation of our statutes. Our procedures and statutes should be applied consistently to defendants and to the State. Anyone who practices criminal law in Oklahoma knows that this Court routinely denies relief to defendants who seek interlocutory review of rulings made by trial judges during the course of a trial. Does anyone think this Court would have accepted jurisdiction of an application for a Writ if the trial judge had denied the defendant's request to dismiss the jury panel? Of course we would not. Neither should we accept jurisdiction in this case.

¶ 5 If the State disagrees with a trial ruling made by the judge, it should be required to follow the statute. The statute very clearly provides that the State may perfect an appeal upon a reserved question of law. 22 O.S.1991, § 1053(3). Since we do not have before us a properly perfected appeal on a reserved question of law, this application should be dismissed.

LILE, Judge: Specially Concurring:

¶ 1 The State's Application to Assume Original Jurisdiction and Petition for Writ of Mandamus or Prohibition is properly before this Court under the provisions of the Oklahoma Constitution [1] and the rules of this Court.[2] Rule 10.6 does not limit—nor should

---

1. Oklahoma Constitution, Art. 7, § 4 (The Court of Criminal Appeals in criminal matters, shall have power to issue, hear, and determine writs of mandamus and prohibition).

2. Rule 10.6, *Rules of the Court of Criminal Appeals*, Title 22 O.S., Ch. 18, App. (2000) ("**A. Writ of Prohibition.** Petitioner has the burden of establishing (1) a court ... has or is about to exercise judicial ... power; (2) the exercise of said power is unauthorized by law; and (3) the exercise of said power will result in injury for which there is no other adequate remedy.... **B. Writ of Mandamus.** Petitioner has the burden of establishing (1) he has a clear legal right to the relief sought; the respondent's refusal to perform a plain legal duty not involving the exercise of discretion; and the adequacy of mandamus and the inadequacy of other relief.").

it limit—availability of the Writ of Prohibition to those cases where the trial court does not have jurisdiction of the parties or the subject matter of the controversy in issue.

3. *Nichols v. District Court of Oklahoma County,* 2000 OK CR 12, 6 P.3D 506 (writ of prohibition and/or mandamus granted where magistrate attempted without authority of law and contrary to the Code of Judicial Conduct to permit television cameras to be used in the courtroom for the purpose of broadcast coverage of preliminary hearing in criminal case); *State ex rel. Wideman v. Beekman,* 1992 OK CR 64, 839 P.2d 661 (writ of mandamus granted directing District Judge to comply with discovery provisions of *Allen v. District Court,* 803 P.2d 1164 (Okl.Cr.1990) and order the defense counsel to disclose to the State the relevant oral, written, or recorded statement, or summaries of same, of witnesses whom the defense intends to call at trial); *Moss* [District Attorney] *v. District Court of Tulsa County,* 1988 OK CR 112, 756 P.2d 1250 (writ issued to District Judge prohibiting him from issuing order to conduct a pretrial line-up in a case that was still pending before preliminary hearing magistrate); *State ex rel. Stout v. Craytor,* 1988 OK CR 79, 753 P.2d 1365 (writ granted where trial court attempted without authority to order District Attorney to amend homicide information to comply with withdrawn plea bargain); *State ex rel. Coats v. Hunter,* 1978 OK CR 57, 580 P.2d 158 (writ granted prohibiting trial court from treating application for post-conviction relief as a class action; overruling respondent's claim that petitioner's remedy should be by appeal and not by extraordinary writ); *State ex rel. Powell v. Shi,* 1977 OK CR 213, 566 P.2d 1170, (writ issued prohibiting Judge from accepting guilty pleas to any lesser included offenses without the consent of the District Attorney); *State ex rel. Wise v. Clanton,* 1977 OK CR 45, 560 P.2d 588, (writ granted prohibiting magistrate from ordering District Attorney to answer incompetent question calling for hearsay. Respondent urged that Petitioner's remedy was appeal. The Court found that appeal would not be an adequate, timely remedy because similar cases were pending, and the problem would likely recur unless Prohibition were granted. "[I]t appears that this same situation will arise in several other pending and like cases in the 12th Judicial District.... We do not feel that the remedy of appeal in the instant case and the others likely to follow is an adequate and effective remedy. And we believe the Respondent as a **Magistrate, although he has proper jurisdiction, is exercising an unauthorized application of judicial force** and further justifies or requires the writ to issue.) (emphasis added); *State ex rel. Young v. Warren,* 1975 OK CR 77, 536 P.2d 965 (prohibition granted in part, setting aside second change of venue, setting aside appointment of trial judge, and setting aside admission to bail in capital case); *State ex rel. Fallis v. Truesdell,* 1972 OK CR 47, 493 P.2d 1134 (writ granted prohibiting magistrate at preliminary hearing from ordering District Attorney to advise the court of any and all statements in his possession making reference to certain testimony); *State ex rel. Pitchford v. District Court of the 24th Judicial District,* 1958 OK CR 35, 323 P.2d 993 (writ granted prohibiting District Judge from ordering County Attorney after preliminary hearing to file an information on or before a certain date; "Prohibition is proper remedy where an inferior tribunal presumes to exercise judicial power not granted by law, or is attempting to make an unauthorized application of judicial force."); *State ex rel. Burford v. Sullivan,* 86 Okl.Cr. 364, 193 P.2d 594 (1948) ("Prohibition is the proper remedy where an inferior tribunal assumes to exercise judicial power not granted by law, or is attempting to make an unauthorized application of judicial force.... [P]rohibition is a preventive remedy issuing to restrain future action, and is directed to the court itself.").

We have held in numerous cases that the State of Oklahoma is entitled to seek an extraordinary writ of Prohibition or Mandamus from this Court to remedy the improper exercise of judicial authority.[3] This Court's

This Court in *State ex rel. Burford v. Sullivan,* 193 P.2d at 601, quoted from an opinion of the Oklahoma Supreme Court, *Rose v. Arnold,* 183 Okla. 286, 82 P.2d 293 (1938), which said:

" 'Prohibition' is an extraordinary judicial writ issuing out of a court of superior jurisdiction to keep inferior courts and tribunals within the limits and bounds prescribed for them by law, and its use in proper cases should be upheld and encouraged, since it is of vital importance to the due administration of justice."

The Oklahoma Supreme Court said as early as 1908 in *State ex rel. Haskell, Governor v. Huston, Judge,* 21 Okla. 782, 97 P. 982 (1908):

"Prohibition is a proper remedy where an inferior court is attempting to make an excessive and unauthorized application of judicial force in a case otherwise cognizable by it."

This language has been repeated by this Court in *State ex rel. Boatman, Co. Atty. v. District Court Of Okmulgee County,* 122 Okla. 69, 250 P. 1023, 1024 (1926). The Oklahoma Supreme Court repeated the same language in several cases including *Wallace, County Treasurer v. Gassaway, District Judge,* 148 Okla. 265, 298 P. 867 (1931):

"This court in *Redcorn v. District Court,* 141 Okl. 237, 284 P. 1113 [1930], said: 'Prohibition is the proper remedy where an inferior tribunal assumes to exercise judicial power not granted by law, or is attempting to make an unauthorized application of judicial force in a cause otherwise properly cognizable by it.' To the same effect is *Lattimore v. Vernor,* 142 Okl. 105, 288 P. 463 [1930]; *Vogel v. Gassaway,* 139 Okl. 61, 281 P. 302 [1929]."

The Oklahoma Supreme Court said in *Redcorn v. District Court,* 141 Okl. 237, 284 P. 1113 (1930):

"Prohibition is the proper remedy, where an inferior court is attempting to make an excessive and unauthorized application of judicial

authority herein, resting upon nearly a century of precedent is clear.

¶ 2 We accepted original jurisdiction in the instant case and grant relief because the Honorable Judge Bragg's order striking, on the basis of race, the jury panel assigned to her court was not authorized by law. Jurors in Oklahoma County, in accordance with state law, are selected at random from all persons in the county who hold a valid driver's license. In the long run, if selection is random, the percentage of African Americans in jury panels will closely approximate the percentage of African Americans in the population of all licensed drivers in the county as a whole. No evidence has been presented in this case as to what that theoretical percentage is. This does not mean that every panel, sub-panel, or jury drawn will track that exact theoretical percentage. In fact it would be statistically improbable, approaching impossible, that every randomly drawn panel would have the same racial composition. Some panels, naturally, will have more African American citizens than others. The laws of mathematical probability and statistical inference tell us that the number of persons of a particular racial group that we would expect to find in a particular random sample (panel) could be expressed as an expected standard deviation from the theoretical mean, which could be graphed as a symmetrical bell curve of mathematical probability.[4] As long as the procedure used to select the jurors is fair, which was not contested in this case, and the selection is random, which also was not contested, the resulting panel is fair.

¶ 3 The goal of our justice system should be to eliminate racial discrimination in the selection of jurors, and not to promote it. The United States Supreme Court said in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69 (1986):

> "Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try.... As long ago as *Strauder [v. West Virginia*, 10 Otto 303, 100 U.S. 303, 308, 25 L.Ed. 664 (1879) ] ... the Court recognized that

force in a case otherwise properly cognizable before it, or where the lack of jurisdiction is apparent on the face of the proceedings." *Yarhola v. Duling*, 86 Okl. 171, 207 P. 293 [1922]; *Davis v. Dist. Ct.*, 129 Okl. 236, 264 P. 176, 178, 57 A.L.R. 72 [1928]; *Jones v. Pugh, Judge*, 130 Okl. 291, 267 P. 272 [1928]; *Owen v. Dist. Ct.*, 43 Okla. 442, 143 P. 17, Am.Ann.Cas. 1917C, 1147 [1914]; *Kincannon v. Pugh*, 114 Okl. 90, 243 P. 945 [1926].

....

"Even though the court below possessed jurisdiction of the subject-matter ... and even though the trial court was empowered to make and enforce an order of alimony and attorney fees pendente lite ... yet we hold, admitting jurisdiction, that the lower court attempted to make an unauthorized application of judicial force.

"The temporary writ of prohibition is made permanent."

The Oklahoma Supreme Court also in *State ex rel. Haskell, Governor v. Huston, Judge*, 97 P. at 990 (1908), quoted from a treatise in accord with its decision:

"High's Extraordinary Legal Remedies (2d Ed.) says, in speaking of this writ [prohibition]: 'Sec. 781. The province of this writ is not necessarily confined to cases where the subordinate court is absolutely devoid of jurisdiction, but is also extended to cases where such

tribunal, although rightfully entertaining jurisdiction of the subject-matter in controversy, has exceeded its legitimate powers.' "

4. For example, if 30,000 out of 350,000 licensed drivers in a hypothetical county were members of a certain racial group, assuming a large number of drawings, we would expect the most frequently occurring number of persons from that racial group occurring in a randomly drawn sample of 35 persons would be three (3) (the peak of the bell curve). Somewhat less frequently, we would expect 2 or 4 members from that racial group to be present in a random sample of 35 persons. (The probability that two (2) members of that group would be drawn would be the same as the probability that four (4) members of that group would be drawn.) Somewhat less frequently still, we would expect 1 or 5 members from that racial group to be present in a random sample of 35 persons. (The probability that one (1) member of that group would be drawn would be the same as the probability that five (5) members of that group would be drawn.) Since it would never be legal to quash a fairly drawn panel for racial reasons, it would be just as illegal to quash the panel because it contained only one (1) member of a racial group as it would be to quash a panel because it contained five (5) members of that racial group.

by denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror." (Emphasis added.)

¶4 I am hereby authorized to state that

Judge Lumpkin joins in this specially concurring vote.